La Salle National Bank, a National Banking Association With Trust Powers Under the Laws of the State of Illinois, as Trustee Under Its Trust No. 20116, and Not Personally or Individually, Plaintiff-Appellee, v. County of Lake, a Body Politic and Corporate, Defendant-Appellant, v. Barrington Countryside Association, Barrington Hills Country Club, C. Kenneth Hunter and Nelson Forrest, for Themselves and on Behalf of All of Their Members of the North Barrington Association, Intervenors-Appellants, v. Village of Barrington, a Municipal Corporation of Illinois, Intervenor, v. Village of Barrington Hills, a Municipal Corporation of Illinois, Intervenor.

Gen. No. 65–26.

Second District.

April 14, 1966.

179

Snyder, Clarke, Dalziel, Holmquist & Johnson, and Bruno W. Stanczak, State's Attorney, all of Waukegan (Stanley Grosshandler, Assistant State's Attorney, of counsel), for appellants.

Runyard, Behanna, Conzelman & Schultz, of Waukegan, for appellee.

STOUDER, J.

This action was commenced in the Circuit Court of Lake County against the County of Lake, one of the Appellants, by the beneficial owners of a land trust in the name of the trustee of said trust. The complaint alleged that the Lake County Zoning Ordinance was unreasonable and confiscatory as applied to Appellee's property and sought a declaratory judgment and injunctive relief. Other parties desirous of upholding the validity of the ordinance were permitted to intervene. From a judgment granting the relief sought, this appeal follows.

In 1939, Lake County enacted a comprehensive zoning ordinance applicable to all of the unincorporated area of Lake County. The subject property was zoned R–1, thereby limiting its use to single-family residences on lots with a minimum size of 5 acres. In 1959, this zoning classification was continued under a comprehensive re-zoning plan adopted by Lake County and was in effect at the time these proceedings were commenced. Appellee claimed that the I–1 zoning classification of the Lake County ordinance which permitted light industrial use should be applicable to his property.

Appellee's property is a vacant lot containing 24 acres in a subdivided area located in the southwest corner of Lake County. It is bounded on the north by the right-of-way of the Chicago and Northwestern Railroad. State Route 14, also known as the Northwest Highway, is contiguous with and parallel to the north line of the railroad right-of-way. The combined rights-of-way, 299 feet in width, abut the lot on the north at an angle from the southeast to the northwest. The lot is abutted on the south by the fairways of the Barrington Country Club, which is also zoned R–1. The property lying south of the railroad and westerly from the subject property for a distance of $\frac{7}{10}$ of a mile, is vacant, subdivided into large lots and is zoned R–1. The property lying east of the

181

subject property and south of the railroad is zoned R–1 except for a strip commencing 950 feet southeast of the northeast corner of the subject tract. This strip fronts along the south line of the railroad 1,250 feet, varies in width from 300 to 125 feet and is zoned I–1 for light industrial use. The Transolene plastic factory is located along the railroad 650 feet southeast of the northeast corner of the subject property and the land on which it is located measures 750 feet along the railroad and has a width of 400 feet. Part of Transolene's property is zoned R–1 and part is included within the I–1 area previously described. Since the plastic plant has occupied this location for more than 40 years it is considered a legal nonconforming use as to that part of its property zoned R–1. The plastic company is a small business employing 25 persons and its buildings are low lying. Except for the plastics plant the area for approximately ½ mile east of the subject property is vacant, with some residences being located beyond said ½ mile. The area lying north of the combined rights-of-way of the highway and railroad is generally zoned for residential use with lot sizes ranging from ½ acre to 5 acres and is sparsely improved with residences. None of the residences face the highway. Douglas Iron Works, a family operated welding business, is located on the north side of the highway across from the Transolene plant and is zoned for commercial use. Farther to the southeast is located Ballmark Floors, also zoned for commercial use. The area on the north side of the highway, opposite the subject property, is low and swampy and has been used for dumping. A lease has been entered into between Appellee and the Chicago and Northwestern Railroad permitting Appellee to construct a grade level crossing, including warning signals, across the railroad tracks for access to State Route 14 at a cost of $35,000.

A petition to rezone the subject property was filed with the Lake County Board of Appeals requesting that it be

rezoned I–1 thereby permitting light industrial use. The Board recommended such rezoning but the County Board of Supervisors refused to approve such recommendation.

We do not believe this case presents any issue of the general validity of the R–1 zoning classification but only its validity as applied to the particular property in question. Appellant contends: First, that there is a presumption of the validity of a zoning ordinance; Second, that the presumption of validity can only be overcome by clear and convincing evidence, that the ordinance is unreasonable or arbitrary and does not promote the general health and welfare; Third, that where the effect of the ordinance is reasonably debatable the presumption of validity is not overcome; and Fourth, that the hardship, if any, claimed by Appellee is the result of his own conduct.

We are thus faced with a familiar problem, namely the resolution of the conflict between the right of a property owner to use his property as he deems best and the right of the public, through its legislative bodies, to regulate the use of property and promote the general health and welfare.

■ We shall first consider Appellant's contention that Appellee is precluded from objecting to the zoning ordinance since his hardship, if any, is self-imposed. There is evidence in the record that the owners of the beneficial interest in the land trust are experienced real estate developers and builders, that the subject property was purchased with full knowledge of its use limitation, and that one-half of the beneficial ownership of said trust was in fact acquired after the commencement of these proceedings. This contention is fully answered in Trust Co. of Chicago v. City of Chicago, 408 Ill 91, 96 NE2d 499, and People ex rel. Chicago Title & Trust Co. v. Reiter, 25 Ill2d 41, 182 NE2d 680, where the court held that acquisition of property, shortly before the commencement of rezoning proceedings, with full knowledge

183

of the zoning limitation, is only one factor or circumstance which should be considered by the court in determining possible hardship and that the owner is not thereby estopped from objecting to an ordinance which is otherwise improper. In the instant case we believe that the recent transfers were proper circumstances to be considered by the court but they do not prevent or estop the present owners from attacking the validity of the ordinance.

■■ We have frequently held that whether or not a zoning ordinance is reasonably related to the general health and welfare as applied to a particular piece of property depends on the peculiar and particular circumstances of each case. In Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584, the court indicated that in determining this question the following factors should be considered: (1) The existing uses and zoning of nearby property; (2) The extent to which property values are diminished by the particular zoning restrictions; (3) The extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) The relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) The suitability of the subject property for the zoned purposes; and (6) The length of time the property has been vacant as zoned, considered in the context of land development in the area.

The court below considered numerous documentary exhibits including maps, plats, overlays and aerial photographs. It also heard the testimony of many witnesses including real estate brokers, engineers and land use planners. All of the witnesses agreed on the general topography of the area and of the subject property, on the actual uses and permitted zoning uses of the surrounding property, and on the physical relationship of the subject property to its surroundings. They also agreed there is no access to the subject property from

184

public roads and although certain easements relating to access were presented to the Trial Court it is not now contended that such easements did provide access for the subject property. It is likewise undisputed that access over the tracks of the Chicago and Northwestern Railroad to the Northwest Highway would cost $35,000. However there are substantial areas of conflict in the evidence.

The testimony of Appellant's witnesses presents the following picture. The highest and best use of the subject property, as it relates to the surrounding property is that permitted under the R–1 classification. If the subject property were developed into 5 acre home sites the value of such sites would be $64,000, such value, however, contemplating access to the subject property other than over the railroad. There is a market in the area for homes adequately priced to justify development costs including the cost of access. The area overlooking the golf course is very desirable for 5 acre home sites and the areas along the railroad right-of-way and those from which the Transolene plant is visible could be appropriately screened from any objectionable features. Rezoning would result in a 10 to 15 percent depreciation in value of surrounding property and would interfere with residential development of property to the west of the subject property. The present services available, including sanitary drainage, are not adequate for the light industrial use. The nonconforming use, the zoning of other areas and the existence of the railroad right-of-way have no effect on the residential character of the subject property.

Appellee's witnesses countered with the following testimony. The highest and best use of the property is light industrial and as presently zoned the property has little value. The location of the property along the railroad track and in close proximity to commercial or industrial property makes it unsuitable for residential pur-

185

poses. There is no market for homes in that area priced to cover the extremely high development costs. There is other property in the area which would be more desirable as residential lots and less expensive to develop. The light industrial use would not affect the surrounding property unless a building were located near the western boundary in which event the property immediately to the west might be affected. The services, including drainage, which could be built would be adequate. The location of the subject property as related to other property indicates its character to be light industrial. The restrictions under the I–1 zoning classification prevent any use harmful to adjoining property and are adequate to protect adjoining property.

■ ■ It is the Appellant's contention that the evidence is insufficient to support the findings and conclusions of the Trial Court. In Bauske v. City of Des Plaines, 13 Ill2d 169, 148 NE2d 584, the court said, "A difference of opinion does not render the evidence of one party unbelievable, or require a finding that the reasonableness of an ordinance is debatable. In a trial before the court without a jury, the credibility of witnesses and the weight to be accorded their testimony are still to be determined by the trier of fact." The Trial Court's findings will not be disturbed unless they are unsupported by the evidence.

■ Although the evidence in the instant case is conflicting, we nevertheless believe the record contains ample evidence to support the basic findings of the Trial Court. It can be inferred from the testimony of Appellant's own witnesses that although the 5 acre home sites into which the subject property could be developed would have substantial value, the realization of such value would depend on access to the property other than over the railroad right-of-way. Furthermore, the value of such 5 acre home sites, even if otherwise realizable,

would not justify the $35,000 cost of access to the property. The light industrial use contemplated would be consistent and compatible with the development of the surrounding area and the court's conclusion that it would not be inconsistent with general welfare or public interest is supported by the record. This conclusion is not predicated solely on the fact that the property would be more valuable for the light industrial use or that it could not be developed economically under its restricted use. Those factors, taken in conjunction with the circumstance that such use is in fact compatible with the development of the surrounding area and not contrary to public interest, justified the conclusion of the trial court in this cause.

■ We also believe that the Trial Court committed no error in denying Appellant's post-trial motion and suggestion in support thereof, that access easements had been offered by adjoining property owners. We do not believe that circumstances arising after and as a result of the court's action are pertinent to the judgment.

We find no error in the judgment of the Circuit Court of Lake County, accordingly its judgment is affirmed.

Judgment affirmed.

CORYN, P. J. and ALLOY, J., concur.