Chicago and North Western Railway Company, a Wisconsin Corporation, Plaintiff-Appellee, v. City of Des Plaines, a Municipal Corporation, Defendant-Appellant.

Gen. No. 51,891.

First District, Third Division.

April 25, 1968.

Rehearing denied September 11, 1968.

Yates, Haider & Burke, of Chicago (John T. Burke, of counsel), for appellant.

Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, of Chicago (Richard F. Babcock, R. Marlin Smith, and Beardsley Ruml, II, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is a zoning case. The property in dispute is in the City of Des Plaines and is zoned for single-family residences. It is owned by the plaintiff, the Chicago and North Western Railway Company, which desires to develop it for industrial purposes—with the expectation that the industries to be located there will furnish additional business for its transportation facilities.

After exhausting its administrative remedies the railroad instituted the present action for declaratory judgment. The case was referred to a master in chancery who, after hearing the testimony of 51 witnesses, receiving 120 exhibits in evidence and compiling a record of 3,204 pages, submitted a 302-page report which recommended that a decree be entered declaring the City's zoning ordinance invalid insofar as it applied to the plaintiff's property. The chancellor adopted the master's

findings and entered a decree substantially in conformity with his recommendations.

On appeal the City maintains that the presumptive validity of the ordinance was not overcome by clear and convincing evidence. A secondary contention is that the chancellor went beyond his authority in ordering the property rezoned from a residential to an industrial classification without evidence having been heard or a designation having been made as to the particular industrial use to which it would be devoted. Other contentions concern the fee allowed the master and the denial by the court of a petition filed by the City during the trial of the case to disqualify the master.

The property, a vacant area of approximately 25 acres which has been used for farming, is 2,400 feet long (north to south) and 430 feet wide (east to west). The entire 2,400-foot east side is adjacent to the plaintiff's railroad tracks. The tracks are upon an embankment and are from six to ten feet higher than the property. The tracks are used primarily for switching. The switching operations take place six days a week, mostly in the morning hours, and the number of freight cars involved averages 35 per day. The two sets of track are separated from the property by a 100-foot wide strip of vacant land which likewise belongs to the railroad.

To the east of these tracks are three industries. The northernmost is a light manufacturing plant 250 feet from the tracks. Its land abuts the tracks for 800 feet. Next in line, and occupying 1000 feet along the side of the tracks, but 250 feet east of the property in dispute, is the yard of a coal and material company. This company is a customer of the plaintiff and is served by three private switching tracks. Its principal business is ready-mixed concrete. In preparing orders for delivery, sand and gravel are conveyed from 25-foot high storage piles to an 80-foot high mixing tower. Trucks are pulled beneath the tower and the necessary materials are fun-

neled into them. The trucks depart from an eastern exit and mix the cement on the way to delivery. To the south of this yard, and taking up the rest of the space east of the tracks, is a gasoline and fuel oil storage depot. The depot has nine above-ground tanks ranging up to 28 feet in height and having a combined capacity of 122,000 gallons. The tanks are surrounded by a four to six-foot high concrete wall which is approximately 200 feet away from the eastern edge of the subject property.

Turning to the west boundary of the property, and again proceeding from north to south, there is a 181-home subdivision which takes up 40 percent of the western border. South of the subdivision are towers supporting electric power lines. The easement upon which these towers are erected is 210 feet wide and traverses the property from east to west. Next to this easement, on land which runs 483 feet along the west boundary, there is a school, constructed in 1964. Two hundred and sixty children attend this school from kindergarten through the third grade. The land south of the school, and occupying the balance of the west boundary, is owned by the City of Des Plaines. Located there is a two-story municipal filtration plant situated atop an 18-foot knoll. Part of the City's land is bounded by a wire fence enclosing two 12 to 16-foot deep lime beds used for the treatment of water.

We now turn to the north and south sides of the property. A creek (which sometimes overflows its banks and causes sewage problems) runs along the north side. It is about 15 feet wide, of varying depths, and winds its way for seven miles through several communities before emptying into the Des Plaines River. On the north bank of the creek, and opposite the property, there is a municipal park. To the north of the park there is a 150-home subdivision. Thirty-four of these homes abut both sides of the railroad tracks. There is a two-lane street on the south side of the property and south of the street

is a subdivision comprised of 89 homes. A few of the homes are adjacent to the railroad tracks and one of these is a combined residence and grocery store—a zoning variation granted by the City.

 The principles of zoning law which are applicable to the present case include the following: There is a presumption of validity in favor of zoning ordinances and the party attacking them has the burden of overcoming the presumption by clear and convincing evidence. The proof must establish not merely that the property in dispute could reasonably be zoned otherwise than it is, but that the legislative classification is arbitrary and unreasonable and without substantial relation to the public health, safety, morals and welfare. Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96 (1962). There must be considered the character of the neighborhood; the use and zoning of nearby property; the suitability of the property for the zoned purpose; the public gain as compared with the hardship, if any, imposed on the property owner; the effect of the present zoning on the value of the property and the effect of the proposed zoning on the value of surrounding property; and the length of time the property has remained unimproved as zoned, considered in relation to the land development in the area. LaSalle Nat. Bank v. County of Cook, 60 Ill App2d 39, 208 NE2d 430 (1965). The validity of each zoning ordinance must be determined from the facts and circumstances pertinent to the particular case and if there is room for a reasonable difference of opinion the judgment of the legislative body that enacted the ordinance must be upheld. People ex rel. Selvaggio v. Village of River Grove, 68 Ill App2d 383, 216 NE2d 218 (1966).

The railroad argues that the combination of its tracks, the industries east of the tracks, the power lines, the water filtration plant, and creek and the grocery store compel an industrial zoning. It particularly stresses its own switching operation and that of its customer, the

coal and material company, as being incompatible with residential zoning. It describes its own operation as having the nuisance characteristics of noise, odor, dust and danger to the safety of adults and children. It describes the operation of the material company, to which it delivers carloads of material, as offensive, dusty, noisy and as being totally repugnant to residential environment. It emphasizes that none of the homes presently alongside of its tracks have the same impact from its switching operation as would homes built on the subject property and that these homes also would have to bear the full brunt of the noisome operation of the material company.

The evidentiary factors comprising the plaintiff's case, while formidable when viewed parochially, are not, when the whole community is considered, sufficient to overcome the presumptive validity of the residential zoning. Over 425 single-family residences are in the immediate vicinity of the property. The trend of development in the nearby area is residential. Since 1957 there has been a tremendous boom in housing construction to the west of the property. The subdivision on its west border was started and completed after the commencement of the present litigation. Immediately to the west of this subdivision there is another one, started in 1959, comprised of 300 homes. To the west of this, 2,500 residences have been constructed since 1957.

All of these developments have homes abutting the same power line easement which bisects the subject property. The towers and the power lines have not arrested residential development nor, for that matter, have the plaintiff's railroad tracks. The same is true of the creek which flows along the north side of the property and the filtration plant at its southwest corner. The plant is not unpleasing in appearance and a witness for the plaintiff referred to it as noiseless. The same witness de-

scribed the fence-enclosed lime beds as odorless and dustless.

In light of the recent residential development in the area, the fact that the plaintiff's property has remained in an unimproved state for so many years cannot be accorded great weight. The plaintiff's property was not the only land which was vacant; almost the entire area to the west was in a like state.

The railroad purchased the property in 1914, at a price of approximately $500 an acre. Conflicting estimates of its value for the different uses were elicited at the hearing and the master found the value to be $3,000 an acre for residential use and $8,000 an acre if used industrially. Of significant note, however, was the testimony of the contractor who developed the subdivision on the west side of the property. He stated that he would be willing to pay $8,500 an acre for it under the present zoning.

There is no evidence that the plaintiff has made any attempt to use or sell the property for residential purposes or contemplates doing so. The vice-president of the railroad's real estate department testified that, if the zoning were changed, the property would be leased for light industrial purposes which would provide freight for the railroad, or would be sold in sections to purchasers who would be likely to need shipping services. From this it appears that it was neither a difference in the market value of the land between the present and proposed zoning (if one does in fact exist) nor the realty's lack of suitability for residential development, but rather a desire for a long-term source of freight revenue that was the motivating factor in the plaintiff's decision to seek a zoning change.

■ The railroad tracks act as a buffer between the industries to the east and the homes and school to the west. Permitting industry to come west of the tracks would bring it close to the existing homes and to the

edge of the land on which the elementary school is located. Homeowners have a right to rely on the zoning that existed at the time they purchased their property and to depend on the zoning not being changed except for the public good. The impact upon the school and upon the well-being and safety of the small children attending it are important considerations. The traffic pattern of the neighborhood would change. Trucks would be using the streets. The heaviest truck traffic would be most likely in the morning hours when children would be going to school and would reoccur in the afternoon when children would be returning home or at play. If homes are constructed on the 25-acre tract as the village and school authorities contemplate, the school will be more in the center of the community it is intended to serve and will draw pupils from all directions.

Railroad tracks may constitute a line of demarcation between industrial and residential uses. Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643 (1964); Maywood Proviso State Bank v. Village of Berkeley, 55 Ill App2d 84, 204 NE2d 144 (1965); Gedmin v. City of Chicago, 88 Ill App2d 294, 232 NE2d 573 (1967). In Urann the elevated tracks of the main line of a railroad ran along one side of the rectangular-shaped property. An area across the tracks was zoned for commercial and industrial use. The property was zoned for single-family residences and its owner sought a classification which would permit multiple-family dwellings. In sustaining the zoning, the reviewing court rejected the contention that the tracks and the commercial and industrial area made the property unsuitable for single-family residential purposes.

The plaintiff points out, however, that there is a difference between main line tracks and the switching tracks of a freight line. This is so, but zoning must begin and end somewhere, and under the total facts of this

209

case the plaintiff's elevated tracks are a suitable dividing line between the industrial and residential areas. While residential lots near the tracks may be less desirable than those farther removed, the switching operations which begin around 9:30 a. m. and end in the early afternoon do not cause the zoning to be unreasonable. Nor do the industries east of the tracks. Among the many expert witnesses who gave their opinions in this case was an accoustical consultant who had measured the effect of the sounds coming from the material yard. He testified that the western edge of the yard was relatively quiet; that the major source of noise emanated from the mixing tower which was some 400 feet from the eastern boundary of the subject property. It was his opinion that the sounds from the yard approximated the upper level of daytime activity in a residential neighborhood and would, therefore, have no depreciating effect upon the property if it were developed residentially.

▮ The conflicting factual considerations in the present case have generated diverse opinions as to the highest and best use of the property. The Des Plaines Board of Zoning Appeals recommended that the zoning ordinance be amended. The City Council of Des Plaines refused to change its ordinance. The master found and the chancellor held that the ordinance was invalid. We hold it valid. Where the reasonableness of a zoning classification is debatable, as these different views of the evidence indicate the present one to be, the legislative judgment of the City Council must control.

In view of our decision it is unnecessary to discuss the defendant's contentions relating to the form of the decree and the disqualification of the master. There remains, however, its contention that the master's fee was excessive.

The court taxed three-fourths of the master's fee, charges and costs against the defendant and one-fourth

against the plaintiff. The defendant objected to the amount of the fee, contending that the hourly rate charged by the master was excessive and that an abstract prepared by him—which made up 236 pages of his 302-page report—was unauthorized by the order of reference. The plaintiff made no objection and took no exception to the amount of the fee or the apportionment of the fee, charges and costs. In this court the plaintiff maintains that, because of the complexity of the factual issues and the large amount of time required, the master's fee is reasonable.

■ There is no reason why any portion of the fee should be borne by the defendant. The defendant's ordinance was presumed valid when this litigation was commenced and its validity has been upheld. The expense of the litigation did not accrue due to initial action on the defendant's part and the defense of its ordinance was justifiable and proper. The unsuccessful plaintiff should not be relieved of the burden of the fee, charges and costs. Cf.: McFail v. Braden, 19 Ill2d 108, 166 NE2d 46 (1960). Inasmuch as the plaintiff who will have to pay the fee believes it to be reasonable there is no need to further consider the defendant's contention that it is excessive.

The decree of the Circuit Court is reversed and the cause is remanded with directions to enter a decree in favor of the City of Des Plaines and to retax the expenses of the litigation in accordance with the view expressed in this opinion.

Reversed and remanded with directions.

SCHWARTZ and SULLIVAN, JJ., concur.