MIDWEST BANK AND TRUST COMPANY, as Trustee under Trust No. 65-004, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(Nos. 53277, 53511 cons.;

First District—July 2, 1971.

Richard L. Curry, Corporation Counsel, of Chicago, (Raymond F. Simon, Corporation Counsel, and Marvin E. Aspen and Edmund Hatfield, Assistant Corporation Counsel, of counsel,) for appellant.

John J. O'Toole, of Chicago, (Concannon, Dillon, Snook & Morton, of counsel,) for appellee.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

Plaintiff brought a declaratory judgment action to void a B4-1, Restricted Service District, zoning of the subject vacant lot in order to build an apartment building which would not conform to the requirements of B4-1, which prohibits groundfloor apartments, but would meet the requirements of an R4 General Residence District classification. The Circuit Court entered judgment for plaintiff, finding that the provisions of the zoning ordinance restricting the use of the property in question were invalid, and allowing plaintiff to build the proposed apartment building. Defendant filed a notice of appeal from this order, but, upon motion of plaintiff, the appeal was dismissed by the trial court because of the pendency of an abutting landowner's motion to vacate the judgment. Defendant appealed from the dismissal order (No. 53277). The trial court then denied the intervenor's motion to vacate and amended its original judgment by adding certain set-back requirements, requiring that the entrance to the proposed apartment building be on its east side, and declaring that the judgment was subject to certain legal rights of the automobile service station adjoining the subject property. Defendant appealed from the amended judgment (No. 53511), and the appeals were consolidated in this court.

The property in question has a 50-foot frontage and a depth of 125 feet at 8344 West Irving Park Road in Chicago. It is situated between a

24-hour Standard Oil service station on its west side (at the corner of Pueblo Avenue) and a florist shop and garden supply store on the east (at the corner of Pontiac Avenue). The subject property is 150 feet east of the intersection of Irving Park Road, a major six-lane arterial highway, and Pueblo Avenue, also a six-lane highway. Opposite the property, on the northeast corner of Pueblo and Irving Park, is a one-story building containing the Cumberland Restaurant and Cocktail Lounge. Immediately east of that is a one-story store building previously occupied by a hardware business but vacant at the time of the trial. The next lot east, directly across the street from the subject property, is a parking lot for the restaurant-tavern. East of the parking lot is a 3-story, 3-apartment building, and east of that, at the corner of Pontiac, is a 5-apartment building.

West of Pueblo is a forest preserve extending about a mile north, a mile south, and a half-mile west.

All of the properties on both sides of Irving Park between Pueblo and Pontiac are zoned B4-1. The two apartment buildings mentioned above are non-conforming uses. The B4-1 zone extends to the east of Pontiac for another 2½ blocks along the south side of Irving Park, at which point eastward the zoning is R3 (General Residence District). On the north side of Irving Park, the B4-1 zone extends for one block east of Pontiac, at which point it changes to R2 (Single-Family Residence District). The B4-1 zone along Irving Park is backed both north and south by an R2 zone.

Along the south side of Irving Park, in the two blocks east of Pontiac, are eleven 3-flat buildings, one 5-flat, two restaurants, a liquor store, and a food market. Opposite, along the north side of Irving Park, are two 6-flat buildings, one 3-flat, a gas station of more than a half block, a drive-in, two vacant lots, a beauty shop, and two offices.

All of the apartment buildings on Irving Park referred to above are of a lower density than the one plaintiff proposes to build which would conform to the requirements of an R4 district. The closest R4 zone to plaintiff's property is four blocks to the south and one block to the east.

The beneficial owner of the subject property is Robert Puoci, a building contractor who bought the property from the adjoining florist shop for $20,500 in 1966 knowing of the existing zoning. He proposes to erect an 8-flat building consisting of 3 efficiency apartments and five 1-bedroom apartments. Under a B4-1 classification, apartments are allowed only above a first-floor commercial use, unless a special use is permitted to allow ground-floor apartments after an appropriate request is made to the Zoning Board of Appeals. Plaintiff's proposed building, however, is

of a density higher than that allowed even under a B4-1 special use and is comparable to an R4 density. It is therefore the inclusion of ground-floor apartments and a higher density in plaintiff's plan which prompted the filing of this suit. Plaintiff did not request the zoning board for a special use, nor was an ordinance amendment sought from the City Council.

The owners of the property adjoining subject property to the west (which is operated under lease as a Standard Oil service station) were granted leave to intervene. They objected to the relief sought by plaintiff on the basis that the use of the ground floor for residential purposes would be incompatible with the commercial character of the frontage in the area, and would thus reduce the value of the commercial properties.

Defendant's first contention is that the use sought by plaintiff is incompatible with surrounding uses and that the invalidation of the zoning classification of the subject property is not supported by the manifest weight of the evidence.

Plaintiff offered the testimony of John McNamara, a real estate broker and appraiser, in support of its position that the existing zoning should be declared invalid. He testified that the B4-1 zoning classification would allow plaintiff to build three living units above a first-floor commercial use and that, in his opinion, the property was worth $12,500 under this classification. If the property were developed as plaintiff has proposed, it would be worth $20,000, in his opinion, the difference being due to the higher density. He thought that a business use would not be good on the subject property. His opinion was that the highest and best use of the lot was a residential use similar to plaintiff's proposal. He thought that the 24-hour gas station next door to the subject property was not detrimental to good living in an apartment building and would be compatible with such a use. He could foresee no use more compatible with the zoning ordinance for the subject property than R4, and that an R4 use would not adversely affect the general area. He based his opinion on the development along the street over the past seven or eight years.

Defendant called as its expert witness Richard McKinnon of the Department of Development and Planning of Chicago. He testified that in his opinion the highest and best use for the subject property from a planning viewpoint would be a B4-1 business use. He thought that an eight-flat building on a 50-foot lot between a gas station and garden shop would be an incompatible use, although residential zoning did exist next to gas stations in some places in the city. He testified that there were at least 4 apartment buildings in the immediate vicinity, within one block

of the subject property, which were being put to R4 uses although they were in the B4-1 zone. They are of a lower density, however, than that of the proposed building. He explained that in 1961 the zoning ordinance was amended to allow the use of the ground floor of a B4-1 property for residential purposes as a special use, by application to the Zoning Board of Appeals. The amendment was enacted because of "the extreme high incidence of vacant stores" on many half-section line streets in the old areas of the city, and because many business uses were becoming unnecessary. The location of the gasoline service stations together with the heavy traffic on Irving Park, a full section-line street and a major thoroughfare, and Pueblo, a half-section line street, were considerations for zoning the subject lot and its surrounding area for business, and, from a planning viewpoint, the zoning was justified.

■■ The rule to be applied in examining the evidence in a zoning case recognizes a presumption in favor of the validity of the legislative enactment, and the party attacking it has the burden of overcoming that presumption by clear and convincing evidence. To meet this burden, the property owner's proof must establish more than the reasonableness of alternative zoning classifications; it must establish that the legislative classification is arbitrary, unreasonable, and without substantial relation to the public health, safety, morals or general welfare. (*Chicago & N.W. Ry. Co. v. City of DesPlaines*, 97 Ill.App.2d 201, 206; *Mutz v. Village of Villa Park*, 83 Ill.App.2d 1, 10-11; *Tuite v. City of Loves Park*, 82 Ill.App.2d 214, 218.) Where, as in the instant case, expert witnesses express conflicting opinions as to the reasonableness of a zoning ordinance in its application to a particular piece of property, the court must, from all of the facts, determine whether there is justification for legitimate differences of opinion. (*Fiore v. City of Highland Park*, 6 Ill.App.2d 62, 71.) And if the court is persuaded by the evidence that the question involved is fairly debatable and the opinions on both sides are reasonable, the answer is not to be supplied by the court, as it must then defer to the legislative judgment of the municipality. *La Salle National Bank v. City of Chicago*, 6 Ill.2d 22, 31.

■■ The essence issue in this case turns on the question of density, or the intensity of use to which land may properly be developed. For some years this has been considered an appropriate basis for zoning classification. (*Cosmopolitan National Bank v. City of Chicago*, 22 Ill.2d 367, 369-70.) Considering all the evidence as to the uses in the area surrounding the subject property, and the higher density proposed by plaintiff for its 50-foot lot, we conclude that plaintiff has failed to meet its burden of proof, as outlined above, and that the ordinance must therefore prevail. *Jans v. City of Evanston*, 52 Ill.App.2d 61, 68, 72.

The judgment of the Circuit Court, being contrary to the manifest weight of the evidence, is reversed.

Nothing in this opinion is to be construed as preventing plaintiff from making application for a special use permit under the ordinance provisions applicable to a B4-1 district.

Judgment reversed.

DRUCKER and LORENZ, JJ., concur.