First National Bank of Skokie, as Trustee, Plaintiff-Appellee, *v.* The Village of Skokie, Defendant-Appellant.

(No. 55565, ▮▮▮▮▮▮)

First District—December 17, 1971.

202

Harvey Schwartz, of Skokie, for appellant.

Haskins and Haskins, of Chicago, (Robert E. Haskins and Charles G. Haskins, of counsel,) for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from a declaratory judgment holding that its zoning ordinance is unconstitutional insofar as it prevents plaintiff, as trustee, from constructing an eight court indoor tennis club on the subject property. On appeal defendant contends that the court's judgment was not supported by the evidence.

The property is vacant and unimproved, and zoned R—2, Single Family Residence. It is located 300 feet north of Touhy Avenue, to the west of Laramie Avenue which comes to a dead end at the southern boundary of the property. It is rectangular, having a frontage of 507 feet along its north and south sides and 145 feet along its east and west sides. To the north is Laramie Park, zoned R—2, Single Family Residence. To the east (from Laramie Avenue east to Leclaire Avenue) the property is zoned R—2. That portion of this area directly east of plaintiff's property is developed with single family residences. The area just north of Touhy is vacant and unimproved. On the west side immediately adjoining the subject property is a Holiday Inn complex, zoned B—2, Commercial, which fronts Touhy Avenue and is bounded by Carpenter Road on the west.. There is a Mobil gas station, zoned B—3, Business District, just west of the Holiday Inn. To the south is a Jewel-Osco complex consisting of (from east to west) a Top Hat Cleaners, Jewel Food Store, Osco Drug Store and a Foremost Liquors Store. This commercial complex is all zoned B—2, Commercial, and extends south from the south line of plaintiff's property to Touhy Avenue. Plaintiff's property abuts the service alley located in the rear (north) of the Jewel-Osco complex. On the south side of Touhy Avenue going east from Carpenter Road for about 300 feet there is a gas station, an animal hospital and a commercial building, all zoned B—2, Business District. Continuing east, the zoning classification changes to B—1, Commercial District.

The following is a summary of the testimony. Herman Rosenfeld testified for the plaintiff. He is a real estate developer and a building contractor. He owns a one-half beneficial interest in the land trust of which plaintiff is the trustee. He and the other beneficiary, Mr. Moss, want to build a tennis club on the subject site at a cost of $1,050,000. The club would operate on a daily basis from 8:00 A.M. to 12:00 P.M. The heaviest use would be from October 1 through April 30. On cross-examination Rosenfeld stated that he and Moss paid $93,000 for the land. It was zoned R—2, Single Family Residential, at the time of purchase. He felt that the site could be developed only into a third class residential development. An ideal residential development would be first class residential. The problems in making the subject property residential are: the necessity for lots with a shallow depth (about 106 feet); the fact that the rear lot lines would abut the Jewel-Osco complex, specifically

the service alley in the rear of the complex; and the Holiday Inn to the west.

Alfred Alschuler testified for the plaintiff. He is an architect, licensed in Illinois, and having 35 years experience. His firm was engaged to design the proposed indoor tennis club. The club would have eight courts, locker rooms, a sauna, a lounge, administrative facilities and a nursery. The building would have an area of 55,000 square feet. On cross-examination Alschuler stated that the subject property covered 74,000 square feet. The proposed club would be 400 feet long, 120 feet wide, and 36 feet high at its highest point.

Richard J. McKinnon testified for the plaintiff. He has been a city planner for 16 years. After describing the zoning classifications and the land uses surrounding the subject site, he stated that the subject property was the only area running parallel to the Jewel-Osco complex that was not zoned B-2, Commercial. He characterized the zoning of the subject property as an isolated zoning pattern. In his opinion the highest and best use of the subject property is for a use permitted under B-2, Commercial, zoning. Since gymnasiums, swimming pools, physical salons and other similar uses are permitted as special uses under this classification, an indoor tennis court would qualify as a special use in the B-2, Commercial, district. In arriving at his opinion he considered the zoning and land uses surrounding the subject property, the nature of the property itself, whether the property could be developed under the present zoning, and the benefits to the Village of Skokie if the proposed club was built. On cross-examination McKinnon stated that it was conceivable to construct 10 or 11 single family homes on the site and provide access to them by extending Laramie Avenue to the northern boundary of the property and then constructing a half street extending west from Laramie, ending in a *cul-de-sac* at the west end of the property. The homes would face north toward Laramie Park and would abut the Jewel-Osco complex property line in the rear (south). The average dimension of each lot would be 43 feet by 112 feet but the yard requirements of the defendant village (requiring a 25 foot front yard) would be such that the size of these homes would be completely out of character with the more expensive homes to the immediate east and those about one-quarter of a mile to the south. In response to the court's questioning McKinnon stated that the homes to the immediate east were 10 to 15 years old, had lot depths of 120 feet, and were worth an estimated $35,000 to $40,000. The subject site could have residential lots which complied with the village's R-2 zoning ordinance, but in his opinion a single family development would not be good planning because of the 400 foot cul-de-sac and the 112 foot depth of the lots.

James Arnold was called by the defendant. He has been a city planner for the defendant for almost three years and is presently the Director of the village's Municipal Planning Department. After describing the subject site, the surrounding land uses and zoning classifications, he stated that the subject site could be subdivided into 11 residential lots; nine lots would have a frontage of 43 feet and a depth of 112 feet; the tenth and eleventh lots would have frontages of 49 and 71 feet respectively but with shallower depths. All 11 lots would comply with the village's R-2 zoning ordinance. In his opinion the proposed tennis club would be an overintensification of the site and lacking in off-street parking. However, it would be a proper special use under a B-2, Commercial district classification. On cross-examination he stated that in 1969 the Village Planning Commission had recommended that the subject site be rezoned for commercial usage. He supported that recommendation and still feels that the property should be developed commercially. On redirect Arnold stated that the Board of Trustees of the village did not accept the recommendation of the Village Planning Commission. He feels that the subject site should be used for additional off-street parking for the existing commercial complex.

Robert Berlow was called by defendant. He has been a registered architect since 1956 and has wide experience in the field. He is familiar with the subject site. The percentage of land coverage on the Jewel-Osco complex is 29.6%. The percentage land coverage of the proposed tennis club is 70.2%. He was aware that under B-2 zoning there could be 100% land coverage.

Neil King testified for the defendant. He is a realtor, an appraiser and a real estate broker. He deals with property in the pertinent area and is familiar with the subject site. In his opinion the site as presently zoned (R-2 Single Family Residential) has a value of $110,000. On cross-examination he stated that he believed that homes valued in the low fifty thousands could be sold if built on the subject site.

Helen Nolan testified for the defendant. She owns a home just southeast of the subject property. She believes that the proposed club will have a negative effect upon her property due to traffic, noise and lights. She also feels that the density of the proposed club will cause flooding problems. On cross-examination she stated that all these problems presently exist due to the Jewel-Osco complex but that the proposed tennis club would compound them.

Based on the above testimony the trial court invalidated the zoning ordinance as it applied to the subject site, specifically finding:

"8. That the existing neighboring uses in the immediate vicinity of the subject premises lend to the subject premises a character com-

patible with an enclosed sports facility as proposed by plaintiff.

9. That if said Zoning Ordinance [R-2, Single Family Residence] be so construed as to prevent the plaintiff from utilizing its property as proposed, * * * [it] would constitute an * * * unreasonable, and capricious exercise of power without any relation to public health, safety and welfare.

10. That the highest and best use of the subject property is commensurate with the use proposed by plaintiff."

*Opinion*

Defendant contends that there was insufficient evidence to support the findings of trial court.

■■ Many factors are relevant in determining the validity of a zoning ordinance as it applies to a particular piece of property. Those which we feel are significant in the instant case are the existing uses and zoning of nearby property, the extent to which the restriction promotes the health, safety and welfare of the public. See *Atkins v. County of Cook*, 18 Ill.2d 287.

■■■ The first mentioned factor, the classification and uses of nearby property, is considered of paramount importance. (See *Manger v. City of Chicago*, 121 Ill.App.2d 358, 367.) The subject property is bordered on its immediate south and west by commercial complexes, both zoned B-2, Commercial. The Jewel-Osco complex adds further influence to the property's lengthy southern boundary since its service alley abuts it. Touhy Avenue, a major thoroughfare, is 300 feet south of the subject site, on the immediate south of which is a business district zoned B-3, Business District (from Carpenter Road east to Laramie Avenue) consisting of a gas station, an animal hospital, retail stores and service centers, an office building and a restaurant. It is true that to the north is Laramie Park, zoned R-1, and that the area to the east is also zoned R-1. But the evidence shows that part of the area to the east, that portion just north of Touhy Avenue, has remained vacant. The high degree of commercial activity immediately surrounding the subject site lends ample support to the court's finding that the proposed tennis club would be compatible with the neighboring uses in the immediate vicinity.

■■ Plaintiff's expert, Richard McKinnon, stated that the highest and best use for the land was one which would be permitted under B-2, Commercial, and that the proposed tennis facility is a proper special use under that category. Defendant's expert witness, James Arnold, did not differ from this opinion.

This leads us into an aspect of the evidence which we feel lends further strength to plaintiff's case. Plaintiff's expert, Richard McKinnon, stated that in arriving at his opinion that the proposed tennis courts

would be the highest and best use for the land, he considered the benefits that would accrue to the village from the construction of the proposed facility, the nature of the surrounding area and the suitability of the property for uses consistent with the present classification. Defendant's city planner, James Arnold, who was defendant's own expert witness, stated that in 1969 the Village Planning Commission had recommended that the subject site be rezoned for commercial usage. He supported the recommendation at that time and still does so. He only differed in opinion as to the ideal commercial use for which the property was suited.

■■ Defendant cites *American Nat. Bk. & Tr. Co. v. Chicago*, 30 Ill.2d 251, for the proposition that "plaintiff's evidence of the unfeasibility of the subject site for single family development was most unsatisfactory." In *American National* the court reversed the trial court's ruling that a single family residence zoning classification was unconstitutional insofar as it prevented plaintiff from building two multi-unit apartment buildings on the subject site. At the trial the defendant had presented a plan showing that the site could reasonably be developed residentially in compliance with the existing zoning ordinance. Defendant argues that in the instant case plaintiff has failed to show that the property is unsuitable for residential purposes, that it presented a plan showing the property to be capable of such development, and that, therefore, *American National* is controlling. It is often stated that each zoning case must be decided on its own particular facts (*LaSalle Nat. Bk. v. County of Lake*, 69 Ill.App.2d 179, 184) and we feel that the facts of the instant case distinguish it from *American National*. In *American National* it was undisputed that the immediate area to the east, south and west of the subject site (the entire area south of Touhy Avenue) was zoned for single family development and built up in compliance with the ordinance. Many of the surrounding homes had been built within the previous seven or eight years. As the court stated at page 253:

"An examination of the evidence, * * *, reveals that the homes in the immediate area are modern, substantial and very well kept, and that the land is almost completely developed to residential use. In our opinion the subject property partakes of the single-family residential character of the neighborhood south of Touhy Avenue."

■■ In the instant case the immediate surrounding area to the west and south consists of large commercial complexes. Plaintiff presented two witnesses who testified that the land was unsuitable for residential development, relying largely on the fact that the property was abutted by the Holiday Inn to the west and the service alley of the Jewel-Osco to the south. The subject property takes its character more from these

adjoining commercial centers than the park to the north or the older homes east of Laramie Avenue. (See *People ex rel. Chicago Title & Trust Co. v. Reiter,* 25 Ill.2d 41, 45.) Nor do we consider a tennis facility to be inconsistent with the large park to its north. There is also evidence that the lot depths of houses built on the site (112 feet) would be eight feet less than those of the homes to the immediate east. Plaintiff's witness McKinnon stated that the village's yard requirements would render the homes incompatible with those to the east. It is true that defendant's witness Neil King testified to the contrary, but we feel that the following language from *Bauske v. City of Des Plaines,* 13 Ill.2d 169, 181, is applicable:

"The defendant has complained that the evidence was insufficient. Mere conflict in testimony as to the highest and best use of property, the impact of the proposed land use on the areas involved or its effect upon property values, does not make irrebutable the presumption that an ordinance is valid. A difference of opinion does not render the evidence of one party unbelievable, or require a finding that the reasonableness of an ordinance is debatable. In a trial before the court without a jury, the credibility of witnesses and the weight to be accorded their testimony are still to be determined by the trier of fact. Unless manifestly against the weight of the evidence, his findings will not be disturbed. Northern Trust Company v. City of Chicago, 4 Ill.2d 432." See also *LaSalle Nat. k. v. Village of Skokie,* 107 Ill.App.2d 104, 109.

We conclude that there was sufficient evidence in the record to support the findings of the trial court.

■■ Defendant argues that due weight be given to the fact that plaintiff purchased this property in the face of the existing R-1, Single Family Residence ordinance. We have considered this along with all of the other evidence but adhere to our determination that the existing ordinance is still unreasonable as applied to plaintiff's property. See *Harmon v. City of Peoria,* 373 Ill. 594, 602; *Wolfe v. Village of Riverside,* 60 Ill.App.2d 164, 169.

The judgment of the circuit court is affirmed.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.