Julius Cohen, Plaintiff-Appellee, *v.* The City of Des Plaines, Defendant-Appellant.

(No. 60428;

First District (1st Division)—July 21, 1975.

Robert J. DiLeonardi, of Des Plaines, for appellant.

Raymond F. Simon, William J. Nellis, and John J. George, all of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

This is an appeal from a judgment declaring the zoning ordinance of the city of Des Plaines invalid in its application to the plaintiff's property and ordering that the plaintiff be permitted to build certain specified uses.

The plaintiff, Julius Cohen, purchased the property in 1962 on contract and received a deed in 1966. The property has always been vacant. At the time of purchase it was in unincorporated Cook County and was zoned for single-family residences. The plaintiff filed an application for a planned unit development with the county, but the city of Des Plaines involuntarily annexed the property and its annexation was upheld over the plaintiff's objection in the appellate court. *People ex rel. Chicago Title & Trust Co. v. City of Des Plaines*, 76 Ill.App.2d 243, 222 N.E.2d 1.

In February, 1967, the plaintiff filed a site plan with the Plan Commission of the city showing the property would be utilized with 82 single-family residences and 62 multiple-family residences. The plan was approved by the Plan Commission on January 9, 1967, but was denied by the City Council. In 1969, another zoning application was filed by the plaintiff in which he would develop the property with only 40 lots zoned R-4, 2 lots changed to C-3 and the remainder retaining their R-2 zoning classification, but this also was denied.

The subject property is slightly more than 37 acres in area and is rectangular in shape. It is approximately 2600 feet from north to south and 610 feet east to west, except for a small rectangular piece 310 feet

by 290.5 feet occupied as a farm by the previous owner, Boeckenhauer, in the southwest corner. It is bounded on the north by Thacker Street, a thoroughfare; on the south by Algonquin Road, an arterial highway; on the east by Alfini's subdivision, consisting of single-family homes, to a point 130 feet north of Algonquin Road; and on the west by the Chicago & North Western Railway right of way along its entire length except for the rectangular piece at the southwest corner. At Thacker the tracks are at grade level and go up until they reach 9 feet above grade at Algonquin. The south side of Algonquin Road facing the subject property and extending from the railroad right of way on the west to Wolf Road on the east is improved by a complex of buildings occupied by Borg-Warner and zoned for scientific research. The north side of Thacker Street is improved by single-family residences. The area immediately to the south of Alfini's Subdivision is bounded by the subject property, Algonquin Road and Wolf Road and is zoned for and improved by several stores. The northern half of the area west of the railroad and east of Mt. Prospect Road is improved with single-family residences. The southern half is improved with a complex of Universal Oil Products and Procon buildings zoned for scientific research.

The proposed plan, which was approved by the trial court, provides that three-flat apartments, 2½ stories high be built on lots 104 through 146; that a four-doctor medical center be built on lots 147 and 148; and that all the rest of the lots be developed with single-family residences. Lots 107 and 136 abut the railroad right of way; lots 104, 105 and 106 are buffered from Thacker by single-family lots to the north; and lots 136 through 146 are contiguous to the property in the southwest corner of the rectangle which is owned and still occupied by the person from whom the plaintiff purchased the subject property. Lots 147 and 148 face Algonquin Road and are contiguous on the east to the stores which lie south of Alfini's Subdivision. Thus, no multiple-family or commercial use faces or is contiguous to any single-family use outside of the proposed subdivision except those to the west of the tracks.

The plaintiff has been a real estate broker, developer and builder for 25 years. He knew of the single-family zoning in the county at the time he purchased the property. He did not think land contiguous to the railroad tracks could be successfully developed for single-family and that the type of home that would have to be built along the tracks would be a detriment to the adjacent single-family homes. The approximate value of the single-family houses he proposed to build would be between $40,000 and $50,000 and the value of the three-flat buildings would be approximately $90,000 each. He said that he could not build and sell good single-family houses anywhere along the tracks but that if they

remained single-family zones they would have a value of about $6,000 per lot or a total value of $258,000 for the 43 lots along the tracks. In his opinion, the remaining 103 lots would be worth up to $13,000 each for single-family purposes as unimproved or a total value for those 103 lots of $1,330,000. The 43 lots zoned for three-flats would be worth $15,000 per lot. He also testified he had never listed the subject property with any broker, nor attempted in any way to sell it for single-family purposes.

Gerald Lindgren, a transportation engineer, testified for the plaintiff that he had conducted a study of the traffic pattern of the subject property if it were developed with 129 multiple-family units, 99 single-family houses, and a four-doctor clinic. He said that on an average daily basis on Algonquin Road and on Thacker there would be slightly less than a 10-percent increase in the existing traffic volume. He said there were sufficient gaps in the traffic to allow cars to turn into and pull out of the subdivision. Based on his experience, it was his opinion that the estimated traffic movements on the roadways adjacent to the site were sufficient to accommodate the traffic generated by the development and that the traffic would not create a congested or unsafe condition on Thacker or Algonquin.

Erwin Stein, a real estate analyst and consultant, testified on behalf of the plaintiff that he visited the elementary, junior high and high schools which would serve the proposed development and obtained information on their design capacity and enrollment as of September, 1972, and their projected enrollment through 1976. In his opinion, the development with single-family and multiple-family of the proposed subdivision would yield a higher school enrollment, but the increase would be within the design capacity of each school affected. He also testified that there would be a yield of approximately 23.5 percent more tax revenue from the multiple-family and single-family homes combination than if all the property were developed for single-family purposes. He testified that there was a market for single-family houses in the Des Plaines area and that the amount of single-family houses proposed by the plaintiff could be absorbed in that market. In his opinion, the 43 lots which the plaintiff proposed to use for three-flat purposes were not suitable for single-family residential purposes but that the highest and best use in his opinion for those lots was for multiple-family residential purposes. In his opinion such a development would not have any adverse effect on the single-family residences to the east of the property. He is not a real estate appraiser and did not have any buying and selling experience with real estate in the Des Plaines area. He defined "highest and best use" as the most profitable probable use. He did not take into account the fair market value of the subject property as presently zoned, nor the value as pro-

posed to be developed in arriving at his opinions. He testified that there was a scarcity of single-family lots in the area; his opinion of 230 dwelling units per year absorption rate in the city of Des Plaines was substantially less than the actual absorption of houses in the last 12 years in the city.

Guy Romito, a real estate appraiser and consultant testified for the plaintiff that the fair market value for all single-family lots on all the subject property would be $12,000 per lot and for the 43 of those which plaintiff wished to use for three-flat purposes the value would be $18,000 per lot for a difference of $258,000 as to those 43 lots. In his opinion the present cash value of the entire property as zoned for 153 single-family units would be $895,255. If developed as 103 single-family lots, 43 flat units and two commercial units, as proposed, the present market value would be $1,085,338. In his opinion there would not be any adverse effect upon the adjacent single-family residences from the proposed use. The lots along the track were not suitable for single-family but were suitable for three-flats and constituted the highest and best use of that portion of the subject property. On cross-examination he testified that three-flat buildings should be built in preference to single-family buildings along the tracks because three-flats would be less susceptible to economic obsolescence and poor marketability than single-family buildings.

Philip Zeitlin, whose qualifications as an expert on city planning and zoning were stipulated to by the defendant, testified on behalf of the plaintiff that the proposed 43 multiple-family units would not have a detrimental effect upon any adjoining property because the proposed development abuts the railroad right of way and acts as a buffer zone. In his opinion placing multiple-family units directly across the street from single-family units is acceptable practice and he has seen it done in many instances.

Ralph Martin, a real estate appraiser and broker with extensive experience in the city of Des Plaines, testified that all of the single-family lots in the area have gone up in value in his experience. His real estate firm was the exclusive agent for the sale of those houses built and being built northwest of the subject property along the railroad tracks. Over the last 2 years, his firm had sold 60 homes in that subdivision in the price range of $34,000 to $40,000 and several other homes had been built to order in that subdivision in the low $50,000 price range. He stated that some of those houses back up to the same railroad tracks that form the western boundary of the subject property. He testified that the demand for homes in the area was high and that his firm had 16 back orders for houses in that subdivision to the northwest abutting the tracks, and that the builders had not been able to build them as fast as his firm could sell them. His experience with the buyers of those homes was that they had no

problems in obtaining mortgage financing for those homes abutting the tracks or elsewhere in the subdivision and that they could get up to 80- to 90-percent financing. He noted that the 43 lots for three-flat buildings as proposed by the plaintiff were larger than those required for the R-2 single-family lots as zoned. He stated that the plaintiff could get approximately 8 more single-family lots in the western perimeter of the subject property proposed to be developed for 43 three-flats.

In his opinion the property is presently zoned at a fair market value of $925,000. The fair market value of the subject property for the uses proposed by the plaintiff was $1,509,000. In his opinion the proposed single-family lots facing the proposed three-flats under the plaintiff's development plan would sell for less than if they were facing single-family houses to the west of the tracks. He also testified that in his opinion the plaintiff's proposed use would depreciate the residential values both in the proposed subdivision and in the adjacent subdivision, and it would also cause a depreciatory effect on the adjacent Boeckenhauer farm which had been designated a landmark by the State of Illinois. It was also his opinion that the homes along the tracks would probably sell for $100,000 to $200,000 less than those on the interior streets in the proposed subdivision. The proposed development in his opinion would be introducing multiple-family zoning into an area that had none within three-quarters to one mile. He said that the subject property had an excellent location with respect to schools in the area and that the area had a strong market for single-family homes. He was an alderman for the city of Des Plaines from 1963 through 1967.

Rolf Campbell, a planning and zoning consultant, testified for the defendant that the area around a gravel pit to the north of the subject property had been developed with single-family residences. The site plan submitted by the plaintiff shows two proposed streets running north and south in the subdivision. The westernmost street is Oxford Road. Under the proposed plan, the lots on the west side of Oxford Road will be the multiple-family lots and those on the east side will be single-family residences. Under an earlier plan proposed by the plaintiff, there would be two-flats on both sides of Oxford. Campbell said he was familiar with the earlier plan and that it was his opinion that elimination of the multiple-family on the east side of Oxford harmed the effect of the original plan. In his opinion the highest and best use would be the existing R-2 classification; his opinion was based on the trend of development in the area. He said that the existing Universal Oil Products, Borg-Warner and Illinois Tool Works buildings were not fully compatible with single-family but that they were more compatible than multiple-family. He also testified that if multiple-family units were constructed they would

have to have at least five parking spaces which would add to the intensity of the area, but he conceded that the traffic generated would not be a problem. He has never testified against the city of Des Plaines.

It was stipulated that between January, 1962, and April, 1972, a total of 181 building permits were issued by the city of Des Plaines within an area bounded on the west by Mt. Prospect Road, on the south by Oakton Street, on the east by the east side of Alfini Drive, on the north by Elmhurst Road, all within the area of 1 or 2 miles of the subject property; and that of these 173 building permits were for single-family residences, 7 were for either commercial or industrial uses, and 1 was for a city fire station on Thacker Street.

None of the adjoining owners of single-family residences testified in opposition to the proposed use.

At the close of all the evidence the trial court made specific findings of fact following the guidelines set out in *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65. It found that the property would be worth $190,000 more under the proposed development; that the R-2 zoning of the property was unjustified and that it did not promote the health, safety, morals, or general welfare of the public; and that the proposed development was compatible and reasonable in its "application to the subject property."

■■ It is fundamental that a zoning ordinance is presumptively valid; zoning classification is a legislative rather than a judicial function; and before a court may interfere, the party attacking the validity of the zoning ordinance must establish by clear and convincing evidence that the legislative body has abused its discretion. (*Trendel v. County of Cook*, 27 Ill.2d 155, 188 N.E.2d 668.) The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss. Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. *Liebling v. Village of Deerfield*, 21 Ill.2d 196, 171 N.E.2d 585.

■■ Hardship to the owner is but one factor to be considered; and it is not significant if the public's welfare requires the restriction and the resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction or resulting loss, the ordinance fails and the presumption of validity is dissipated. *Krom v. City of Elmhurst*, 8 Ill.2d 104, 133 N.E.2d 1.

■■ The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial rela-

tion to the public welfare. *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65.

The validity of each zoning ordinance must be determined on its own facts. *Stalzer v. Village of Matteson*, 14 Ill.App.3d 891, 901, 303 N.E.2d 489.

■■ As we have noted, the trial court made findings of fact following the guidelines of *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65. Those guidelines have been stated often and need not all be repeated here. Significantly, the defendant does not maintain that any of those findings are not supported by the evidence. The defendant rather isolates each aspect of the defendant's proof and argues that each aspect standing alone is not sufficient to overcome the presumption of validity. To illustrate, the defendant contends that the fact that the property may be more valuable for purposes not permitted by the existing zoning is not controlling; that the mere location of property along a heavily traveled street or railroad tracks does not render that property invalid for single-family purposes; and that an experienced real estate developer who purchases property knowing of a zoning restriction is not favored. We have no quarrel with the defendant's arguments as abstract propositions of law, but as the defendant concedes in its brief: "No one test is controlling; all must be considered." While an "eyes-open" purchaser would obviously not be regarded in the same light as a buyer unaware of the zoning restrictions, the courts do not close their doors to the purchaser with knowledge. *First National Bank v. Village of Skokie*, 3 Ill.App.3d 201, 208, 278 N.E.2d 496.

With respect to the effect of the railroad on the subject property, the defendant relies on *Chicago & North Western Ry. Co. v. City of Des Plaines*, 97 Ill.App.2d 201, 240 N.E.2d 280, which involved the same railroad tracks as this case. In that case the railroad sought to develop property zoned single-family for industrial purposes. The property involved is now the Kingsbury Subdivision, a residential development immediately northwest of the subject property in this case. The appellate court reversed the decree in favor of the railroad, pointing out that the area immediately to the west of the property was residential, and rejected the railroad's argument that since the property immediately to the east of the tracks was industrial, the property immediately to the west should be also. The court said (97 Ill.App.2d 201, 208):

> "The railroad tracks act as a buffer between the industries to the east and the homes and schools to the west."

That case does not support the defendant's position here. If the tracks act as a buffer between industries to the east and the homes to the west,

they would also act as a buffer between the multiple-family proposed use on the east and the same homes on the west, thus refuting the defendant's contention that the proposed use would provide an intrusion into the single-family development to the west of the tracks.

The defendant did not rebut the evidence that no traffic problems would be created; in fact, Campbell, the defendant's witness, also so testified. Nor did it rebut the testimony that the anticipated higher school enrollment was within the design capacity of the area schools and that the tax revenue would be increased 23.5 percent. And Campbell also conceded that the industrial uses partially surrounding the property were not "fully compatible" with single-family zoning. See *Stalzer v. Village of Matteson*, 14 Ill.App.3d 891, 901, 303 N.E.2d 489.

■■ The only evidence submitted by the defendant tending to establish any detriment to the public was the testimony of Martin that the single-family homes would suffer a depreciatory effect. The plaintiff's witnesses testified that the proposed use would have no depreciatory effect on the surrounding single-family homes. In his findings, the trial judge noted that the experts had differed in their opinions as to any possible adverse effect on the area and that the credibility of the witnesses was for him to determine. He accepted the testimony of the plaintiff's experts. Where the testimony in a trial without a jury is contradictory, the weight to be given that testimony is a matter for the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence. (*First National Bank v. Village of Morton Grove*, 12 Ill.App.3d 589, 594, 299 N.E.2d 570.) In this regard we note that the court heard Martin, the defendant's expert, admit that he was surprised to learn that the plaintiff had filed an amended petition seeking multiple-family dwellings only on the lots abutting the railroad tracks. He then told Cohen: "I didn't know that. But if that's the case, why are we here? What is the argument about? Why can't the case be settled?" He also heard a witness for the plaintiff testify to a conversation with Campbell in which Campbell told him, "I'm sure nobody could object to a single row of apartment buildings." Campbell could not recall such a conversation but did not deny it.

We conclude, therefore, that the trial court's determinations that the loss to the owner was substantial, that there was no reasonable basis in public welfare requiring the restrictions and resulting loss, and that the proposed use was reasonable are supported by clear and convincing evidence. The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.