**People of the State of Illinois ex rel. Chicago Title and Trust Company, a Corporation, as Trustee Under Provisions of a Trust Agreement Dated March 28, 1962, and Known As Trust No. 44287, Plaintiff-Appellee, v. City of Des Plaines, Defendant-Appellant.**

Gen. No. 50,517.

First District, Third Division.

July 14, 1966.

Robert J. Di Leonardi, of Des Plaines, for appellant.

Haskins, Maguire & Haskins, of Chicago (Robert E. Haskins and C. W. Eckert, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment in a quo warranto proceeding in which the trial court held invalid an ordinance of the defendant municipality undertaking to annex certain unincorporated territory pursuant to the provisions of section 7–1–13 of the Cities and Villages Act (Ill Rev Stats, c 24, § 7–1–13 (1961)). This statute authorizes annexation without the consent of any of the owners, provided such territory is sixty acres or less and is "wholly bounded by one or more municipalities. . . ."

The property in question consisted of two parcels, one held in trust by the relator and hereinafter referred to as relator's property, and the other a right-of-way belonging to the Chicago and Northwestern Railway. The parcels lie side by side and constitute a single unincorporated territory less than sixty acres in size, wholly encircled by the defendant municipality with one trivial exception later noted. The right-of-way lies between the municipality and one of four sides of the relator's property. The trial court held in substance that the statute in question did not empower municipalities to annex railroad rights-of-way and that hence relator's property was not wholly bounded by the defendant municipality as the statute required. Defendant argues that there is no statutory impediment to the annexation of railroad rights-of-way and that therefore the existence of the right-

of-way between relator's property and the municipal boundaries did not operate as a bar to the annexation of both parcels pursuant to the provisions of the statute.

Whether railroad rights-of-way may be annexed appears to be a question of first impression in this State, and both parties note the dearth of statutory or case authority on this point. Plaintiff stresses that railroads are the subject of comprehensive regulation and supervision and that they are under the general jurisdiction of the Illinois Commerce Commission, with the exception that municipalities are authorized to determine maximum speeds within the municipal limits. Ill Rev Stats, c 114, §§ 1–188 (1963). Plaintiff argues that had the legislature intended or envisioned such annexation by municipalities, it would have spelled out more fully the powers a municipality would have to regulate railroads. Defendant counters that the absence of any special provision concerning annexation of railroad property indicates that this type of property should not be differentiated from any other for purposes of annexation.

█ In deciding whether railroad rights-of-way are exempt from the provisions regulating involuntary annexation, it is necessary to examine various sections of the Cities and Villages Act dealing with changes in the status of unincorporated territory. The general authority for annexation of contiguous land is found in section 7–1–1, which provides as follows:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality, may be annexed thereto as provided in this Article."

The words "any territory" have a plain meaning, and in the absence of any statutory provision or public policy to the contrary, must be held to include land used as a railroad right-of-way.

246

■ Section 7–1–13, which governs the annexation in the instant case, likewise refers to "any unincorporated territory" again without setting aside any particular type of property for special treatment. The apparent intention of the legislature was that any territory otherwise meeting the requirements of the section may be annexed. Remaining subsections of chapter 24, section 7, subsection 1, also fail to make any allusion to railroad lands as distinguished from other types of property. Indeed, the only mention of railroad rights-of-way is in section 7–1–2, which in part outlines an alternative procedure for annexation. The statute says:

> "[T]he corporate authorities of any such municipality may initiate the proceedings by enacting an ordinance expressing their desire to annex such described territory; provided, no tract of land in excess of 10 acres in area may be included in the ordinances of the municipality initiating the proceedings without the express consent of the owner thereof, unless the said tract (1) is subdivided into lots or blocks or (2) is bounded on at least 3 sides by lands subdivided into lots or blocks; a tract of land shall be deemed so bounded if it is actually separated from such subdivision only by the right-of-way of a railroad or other public utility or at a public highway."

Clearly, the exceptions pertinent to railroads, other public utilities and public highways were made with the realization that as to such lands, platting or subdivision could not be expected and that their presence would otherwise unduly limit the application of the provisions. The existence of a specific exception for railroad rights-of-way in section 7–1–2, coupled with the absence of such an exception in the other annexation provisions, *where platting is not a requirement,* makes it evident that it was not the intention of the legislature to exempt railroad rights-of-way in general from the annexation laws.

247

Further support for the position of the municipality, that railroad property should not be treated differently, is found in section 2–2–5 of the Cities and Villages Act, which provides:

"Whenever any area of continguous territory, not exceeding 4 square miles, and not already included within the corporate limits of any municipality has residing thereon a population of not less than 2,500 persons . . . it may be incorporated as a city. . . ."

No exception is made for railroad property, and it thus appears that a railroad right-of-way, if within the boundaries of a newly incorporated city, would be considered part of that city.

The provisions of the Cities and Villages Act make no exception for annexation of railroad rights-of-way. It would be farfetched for us to assume, as the relator appears to argue, that the regulatory powers of the Commerce Commission would otherwise be impaired when every day they are exercised over railroads whose property is within municipal boundaries. The reason that the Railroad Act contains no elaborate division of power between municipalities and the Commission is that none is needed.

Cases cited by plaintiff do not support its position. In Oregon Short Line R. Co. v. Village of Chubbuck, 83 Idaho 62, 357 P2d 1101 (1960), the Supreme Court of Idaho held invalid an ordinance of a municipality purporting to annex certain railroad property because the statutory requirements regulating the involuntary annexation of territory had not been met. The statute in that case provided as follows:

"Whenever any land lying contiguous or adjacent to any city, town, or village . . . shall have been, by the owner . . . thereof, *laid off into lots or blocks*, containing not more than five acres of land each

> . . . or whenever the owner . . . has sold, or begun
> to sell off such contiguous or adjacent lands by
> metes and bounds in tracts not exceeding five acres,
> it shall be competent for the council or board of
> trustees . . . by ordinance, to declare the same . . .
> a part of such city, town or village." (Idaho Code,
> Title 50, ch 3, Sec 50–303 (1955).) (Emphasis
> added.)

The court noted that land used as a railroad right-of-way could not be laid off in lots or blocks or sold in tracts as required by statute, and hence was not subject to annexation.

Plaintiff also cites Forsyth v. City of Hammond, 142 Ind 505, 40 NE 267 (1895) and Township of Genesee v. Genesee County, 369 Mich 592, 120 NW2d 759 (1963) which deal with the use of a railroad right-of-way as a point of contiguity for annexation; in other words, the disregarding of a right-of-way which interferes with contiguity between the annexing body and the property to be annexed. This issue is not before the court in the instant case, as the ordinance in question undertook to annex the right-of-way and did not undertake to skip over it.

██ It is our conclusion that there is no statutory impediment to the annexation by a municipality of territory merely because it is used as a railroad right-of-way.

██ ██ Plaintiff also pointed out to us that there is a small gap in the continuity of the boundary of the defendant municipality with the land proposed to be annexed. This gap of approximately 49 feet was inadvertently omitted in the course of annexation of other territory adjoining the southern boundary of the property. Plaintiff does not appear to contend that this gap alone, which constitutes eight-tenths of one percent of the boundary between the property in question and the municipality, keeps the property from being "wholly

bounded," as required by statute. The law has long treated the trivial with appropriate disdain, and the common sense maxim de minimis non curat lex has often been invoked in this state, e. g., Smith Oil & Refining Co. v. Department of Finance, 371 Ill 405, 21 NE2d 292, and in other jurisdictions. In Rose v. State, 19 Cal2d 713, 123 P2d 505, 517 (1942), the California Supreme Court affirmed a judgment for wrongful taking, even though the trial court based its computation of damages on a property frontage of 120 feet, whereas the frontage as shown in the evidence was 118 feet. This, said the court, was a "discrepancy so infinitesimal as to come within the de minimis rule," (p 517). We conclude that the property in question was "wholly bounded" by the defendant municipality within the meaning of section 7–1–13.

■ ■   Plaintiff also contends that a judgment order entered in 1942 which disconnected relator's land from defendant is res judicata of the present matter. Res judicata exists only when there is identity of the cause of action, the parties, and the subject matter. The cause of action in the disconnection proceeding is not the same as that in the present quo warranto action challenging the validity of an annexation ordinance. In the former, the issues were whether the land (1) is not contiguous in whole or in part to any other municipality; (2) contains 20 or more acres; (3) is not subdivided into municipal lots or blocks; (4) is located on the border of the municipality; and (5) which, if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality. (Ill Rev Stats, c 24, § 7–42 (1941).) In the present action the issues are whether the requirements for involuntary annexation hereinbefore mentioned have been met. Moreover, at the time of the order, relator's land was at the *border*

250

of the city, whereas now it is bounded *on all sides* by defendant's territory.

Annexation is in its nature a response to changing governmental requirements which may be the result of population growth. A judgment rendered a quarter of a century ago when the property in question lay on the outskirts of a small municipality can hardly be viewed as controlling when that land has become an enclave in the midst of onrushing suburban development. A prior adjudication under those circumstances cannot be invoked to keep the property free from future annexation. The 1942 order is not res judicata of the instant case.

We hold that the ordinance in question is valid and that the judgment order of the trial court ousting the City of Des Plaines from exercising governmental authority over and within the property in question should be reversed.

Judgment reversed.

SULLIVAN, P. J. and DEMPSEY, J., concur.