MILDRED EAKINS, Plaintiff-Appellant, v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 83—2418

Opinion filed December 27, 1984.

Robert A. Armstrong, Jr., of Chicago, for appellant.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and Robert A. Seidel, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Mildred Eakins (Mildred) appeals from the order of the circuit court of Cook County which entered summary judgment in favor of defendant New England Mutual Life Insurance Co. (New England Life) upon her petition for a declaratory judgment that the life insurance policy of Mildred's late husband, Miles, was still in full force and effect and had not terminated for nonpayment of premiums. The sole issue presented for our review is the propriety of the trial court's judgment.

We affirm.

The documents of record reflect the following facts: Mildred was the designated beneficiary of a policy issued by New England Life on the life of her husband. The policy had an issuance date of October 1, 1976. Miles' application had been solicited by Ira Goldstein, who had been licensed as a soliciting agent of New England Life since 1963 and was the individual to whom Miles sent his premium payments.

On October 1, 1980, when the premium on the policy came due, Miles was unable to make the payment. Pursuant to the terms of the policy, full coverage was extended to December 31, 1980, whereupon this coverage terminated for nonpayment of premiums. Under the terms of the policy, extended-term insurance coverage was provided from January 1, 1981, to February 11, 1981. The policy terminated and was of no value as of February 11, 1981. Under its terms and provisions, reinstatement could be obtained only during the lifetime of the insured, and only upon satisfaction of the following conditions: (1) current evidence of insurability satisfactory to New England Life; (2) payment of all overdue premiums with interest at 6% per annum compounded annually; and (3) repayment of any policy loans outstanding at the time of default, with loan interest compounded annually to date of reinstatement. New England Life and Goldstein each sent Miles separate notices of policy lapse in March 1981. All correspondence was sent to Miles' office address.

On October 29, 1981, Miles began hospitalization for a heart attack and stroke. Mildred discovered the insurance correspondence while going through his papers at his office. She had no prior knowledge of any such policy. Mildred found, in addition to the correspon-

dence regarding policy lapse, two letters from Goldstein to Miles dated October 9, 1981, and October 15, 1981, respectively. Each letter contained the heading "minimum deposit worksheet" and advised Miles of the premium amount "due now" on the policy. The October 15 letter was a revised worksheet and advised that the figures shown on the October 9 letter were "in error" and stated the "correct" figures. The minimum required cash premium payment shown on the October 15 letter was $1,048.90. Neither letter referred to the policy's termination or to procedures to be followed in order to reinstate the policy.

Mildred telephoned Goldstein shortly after she discovered this correspondence, asking what she could do about payment of the premiums. According to Goldstein, he told her that he did not know to what policy premium notices she was referring and that he believed the policy had already terminated for nonpayment of premiums. He advised her, however, to do as instructed in the letters and stated that he would check into the matter. According to Goldstein, at no time during the conversation did he represent that the policy would be reinstated upon payment or that the policy was in force or would be placed in force upon payment, nor did he make any offers for coverage or reinstatement of the policy or propose any alteration or modification of the terms and conditions of the policy. He further stated that the minimum deposit worksheets were sent in error by a temporary secretary during a period when Goldstein was absent from the office and undergoing hospitalization and convalescence because of an automobile accident.

Mildred could recall little of her telephone conversation with Goldstein. She could not recall any discussion regarding the status of the policy or whether the policy was in force or could be reinstated. Mildred's son, Kevin, stated that he telephoned Goldstein regarding the minimum deposit worksheet correspondence on October 29 and was told by Goldstein "to get it [the premium payment] as soon as possible."

On November 5, following the telephone conversations, Mildred tendered a check in the amount of $1,048.90 to Goldstein. On or about November 11, Mildred informed Goldstein that Miles had died on November 9. Goldstein met with his general agent on November 11 or 12, at which time the status of the Eakins policy was reviewed. Because it was determined that the policy had terminated more than eight months previously, Mildred's check was not negotiated but was returned to her by the general agent as enclosure to a letter to her dated November 12 stating that the check could not be accepted be-

cause the policy had terminated.

The parties filed cross-motions for summary judgment based upon the pleadings; depositions and affidavits of Mildred and Goldstein; the affidavit of Pauline Belisle, assistant vice president of New England Life; the affidavit of Kevin and Mildred's answers to interrogatories. The trial court granted New England Life's motion for summary judgment on September 16, 1983. Mildred's notice of appeal was timely filed.

Mildred argues first that the trial court should have denied summary judgment because there was a genuine dispute between the parties regarding the circumstances under which Goldstein instructed Mildred to deliver the premium payment in late October and under which he received that payment from her in early November. Mildred contends that this disputed factual issue would have a bearing on whether her tender of the premiums and Goldstein's receipt thereof reinstated the policy. We disagree.

Summary judgment is appropriate where "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) These documents must be strictly construed against the moving party (*McCarthy v. Johnson* (1983), 122 Ill. App. 3d 104, 107, 460 N.E.2d 762), and the reasonable inferences therefrom construed in favor of the party who opposes summary judgment. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 218-19, 422 N.E.2d 879.) The remedy is appropriate only when the right of the movant thereto is clear and free from doubt. (*Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 197, 415 N.E.2d 1099.) Only facts related to material issues are relevant; facts unrelated to essential issues are "immaterial," and no matter how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 236, 456 N.E.2d 348.) A court of review may affirm the summary judgment of a trial court whenever the facts in the record support the lower court's decision (*Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 691, 414 N.E.2d 1218); the court need not strain to adduce some remote factual possibility that will defeat the motion. *Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145, 407 N.E.2d 1031.

Here, Mildred claims that she presented sufficient evidence to draw into dispute the circumstances under which Goldstein told her to

deliver the premium payment in late October and under which he received that payment from her in early November. Mildred contends that the facts controvert whether Goldstein "offered" in late October to reinstate Miles' policy and whether he "accepted" Mildred's premium payment in early November, thereby reinstating the policy. Mildred also argues that the facts controvert whether Goldstein consequently waived the reinstatement requirements stated in the policy.

■■ Even were we to assume for purposes of analysis the version of facts as advanced by Mildred, summary judgment was nevertheless appropriate. The record affirmatively establishes that Goldstein was only a soliciting agent of New England Life and this fact is undisputed between the parties. The policy itself stated in pertinent part that "[o]nly the President, Vice-President or the Secretary of [New England Life] has authority on behalf of [New England Life] to waive or change provisions or conditions of the Policy ***." It has been uniformly held that a soliciting agent generally does not have the authority to waive or enlarge the terms, conditions or exclusions of an insurance policy or application. (*Wallace v. Prudential Insurance Co.* (1973), 12 Ill. App. 3d 623, 628-29, 299 N.E.2d 344; *Spence v. Washington National Insurance Co.* (1943), 320 Ill. App. 149, 156, 50 N.E.2d 128; *Sommerio v. Prudential Insurance Co.* (1937), 289 Ill. App. 520, 7 N.E.2d 631; *Rozgis v. Missouri State Life Insurance Co.* (1933), 271 Ill. App. 155, 157.) "A mere soliciting life insurance agent does not have authority to revive a life policy which has lapsed for failure to pay premiums or assessments thereon." 4 Couch on Insurance sec. 26A:39, at 84 (2d ed. 1984); see also 16 Appleman, Insurance Law & Practice sec. 8699, at 289 (1981); accord, *Mid-Century Insurance Co. v. Norgaard* (S.D. 1979), 273 N.W.2d 191, 193 ("If there is a general rule, it is that an agent cannot revive a properly cancelled policy through mere representations that the policy is still in effect.").

Consequently, even assuming *arguendo* that Goldstein's letters of October 9 and 15 and his telephone communications to Mildred could be construed as "offers" to reinstate the policy and assuming further that his receipt of Mildred's tendered premium payment was performed pursuant to these "offers," this of itself was insufficient to reinstate the policy without evidence of insurability of Miles. Goldstein was without the authority to waive or alter the express terms of the policy's reinstatement requirements which called for such insurability evidence. As a result, Mildred's tendered premium payment did not satisfy the policy's explicit terms, and her offered payment did not effectuate a reinstatement. Thus, the trial court's judgment was proper.

Moreover, the remaining factual issues, all of which were undisputed between the parties as to their factual veracity, support the trial court's determination that New England Life was entitled to judgment in its favor as a matter of law.

First, Mildred argues that Goldstein's letters of October 9 and 15 could be reasonably construed as "offers" to reinstate the policy. We disagree. An offer has been defined as an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract. (See *McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 507-08, 411 N.E.2d 936.) The letters of minimum deposit worksheets on which Mildred's argument depends made no reference to reinstatement of the policy; consequently, we are unable to perceive how these documents could be reasonably interpreted as offers of reinstatement even though no reference is made to reinstatement, much less to reinstatement without evidence of insurability on the part of Miles.

We are not persuaded by Mildred's claim that Goldstein's receipt of her tendered premium payment amounted to an "acceptance" which reinstated the policy.[1] Section 357.5 of the Illinois Insurance Code[2] (Ill. Rev. Stat. 1981, ch. 73, par. 969.5), which is applicable to the Eakins policy as a matter of law pursuant to section 357.1 of the Code (Ill. Rev. Stat. 1981, ch. 73, par. 969.1), provides for reinstatement of a lapsed life insurance policy by operation of law where the insurer has accepted a late premium payment. Under this section, an insurer will be held to have waived lapse because of acceptance of a late premium payment when the insurer negotiates or disposes of the insured's check and either holds the check for much longer than five working days or otherwise manifests its intention to reinstate the policy. (*McMillon v. Old Republic Life Insurance Co.* (1975), 33 Ill. App. 3d 658, 661-62, 342 N.E.2d 246, and cases cited therein.) The facts here demonstrate that New England Life did not accept Mildred's check. New England Life never negotiated her check, but merely held

---

[1](We note parenthetically that this claim is inconsistent with Mildred's contention that Goldstein's letters constituted "offers" of reinstatement, since the same party to a contract cannot logically both "offer" and "accept" the terms of an agreement.)

[2]The Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, pars. 613 to 1065.315), has been repealed prospectively by the Regulatory Agency Sunset Act (Pub. Act 81—999 sec. 4.4, at 3800), effective December 31, 1989 (Pub. Act 83—230 sec. 4.5, at 1858), unless prior to the effective date of repeal the General Assembly enacts legislation providing for the continuation of any agency affected by the repealer. Pub. Act 81—999, sec. 4, at 3798.

it for only five working days. Moreover, section 357.5 of the Code specifically states that a policy reinstated by virtue of an insurer's acceptance of a late premium payment "shall cover only *** loss due to *** sickness as may begin more than 10 days after [reinstatement] ***." (Ill. Rev. Stat. 1981, ch. 73, par. 969.5.) Thus, even assuming *arguendo* that Mildred's tendered premium payment effectively reinstated the policy, this reinstatement would not have included coverage of loss resulting from Miles' illness here since his sickness began more than 10 days *prior* to any such reinstatement. As a result, summary judgment in favor of New England Life was appropriate.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.