DEBORAH A. WOGELIUS, Plaintiff-Appellant, v. DAN DALLAS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—649

Opinion filed January 27, 1987.—Rehearing denied March 19, 1987.

Jody Ann Lowenthal, of Chicago, for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., and Conklin & Adler, Ltd., both of Chicago (Dorothy F. French and Margaret C. Wojciechowski, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Deborah Wogelius, brought an action to recover damages occasioned by the alleged negligence of defendants in their treatment of plaintiff after a suicide attempt. The trial court entered summary judgment in favor of defendants, and plaintiff filed the instant appeal. Plaintiff contends herein that: (1) the trial court erred in granting defendant Holy Family's motion for summary judgment because there exists a question of law; (2) the trial court erred in granting defendant Dallas' motion for summary judgment because questions of law and fact exist as to the extent of the duty owed by defendant Dallas to plaintiff; (3) the trial court erred in dismissing plaintiff's complaint in which she alleged that defendant Dallas engaged in the unauthorized practice of psychology or psychiatry; and (4) defendant Dallas wrongfully submitted insurance claims under defendant Martin's provider number.

The record indicates that on October 5, 1983, plaintiff was admitted to defendant Holy Family Hospital (Holy Family) after an ingestion of drugs and alcohol caused her to attempt suicide. While Holy Family does not have a mental-health facility, defendant Dr. Geoffrey Levy (Levy), a psychiatrist, and Dr. Cucco, a gynecologist, visited the plaintiff the following morning at the request of plaintiff's attending physician, Dr. Abdul Kahn. Levy indicated in a consultative report that plaintiff might be discharged when she was physically able and opined that the circumstances of her admission were not indicative of a lethal intent. Levy referred plaintiff to outpatient treatment at Lutheran General Hospital, which maintained mental-health facilities. Plaintiff was discharged on October 9 by Dr. Kahn and Dr. Cucco.

On October 10, plaintiff telephoned Holy Family and asked to speak with Jeff Parker, M.S.W., a social worker at the hospital. Parker had visited plaintiff during her hospital stay and had been told by her that she was unable to afford private psychiatric fees; Parker asked plaintiff to call him upon her discharge if she would care for information regarding community mental-health resources. Parker initially advised plaintiff to contact Lutheran General Hospital at Levy's suggestion, but was told by plaintiff that she no longer lived near that facility. Plaintiff then requested from Parker the names of private therapists as well as sliding scale resources in the area of her new residence. Parker gave her the following names: Northwest Guidance

Center in Des Plaines; Du Page Clinic in Park Ridge; Outreach Center of Memorial Hospital of Du Page County; Du Page County Health Department; and defendant Dr. Dan Dallas (Dallas), a State-certified clinical social worker and doctor of ministry engaged in the full-time practice of psychotherapy.

Plaintiff subsequently contacted Dallas for therapy treatment. Beginning on October 18, 1983, Dallas met with plaintiff on 11 occasions. On November 15, 1983, Dallas met in consultation with defendant Dr. Ronald Martin (Martin), a State-certified psychologist. Dallas and Martin had an agreement whereby Martin would review the cases of insured patients, such as plaintiff, and sign the necessary forms to assist these patients with financial reimbursement. Martin's signature and provider number were present on plaintiff's health insurance claim forms.

Dallas took a history of plaintiff's previous hospitalization and therapy treatment at the first session and was aware that she attempted suicide after an apparent drug and alcohol overdose. Dallas' progress notes indicate that Dallas diagnosed plaintiff as very depressive and with secondary anxiety or anger. Plaintiff described a disorganized family background and complained that her family never cared for any of her needs. Plaintiff told Dallas that she had attempted suicide on numerous occasions in her life. Plaintiff also complained that her supervisor at work was very hard on her. Plaintiff told Dallas of her relationship with a man she had been dating named Mike and informed Dallas that she was frightened that she might be pregnant.

When seen in December 1983, plaintiff told Dallas that she was experiencing less mood swings, was able to yell back at her supervisor, and had been more nutrition conscious. Plaintiff was perceived by Dallas as more positive in attitude and more able to communicate better with her family and Mike. Plaintiff told Dallas that she was able to "do it alone." On February 6, 1984, Dallas met with plaintiff for what he perceived to be their last session. Plaintiff reported that she was feeling good about herself and was doing well. Dallas closed plaintiff's file at the end of their meeting.

On May 5, 1984, plaintiff arrived at Dallas' office and requested an emergency counseling session. Plaintiff indicated that at the termination of the prior session she felt fine but told Dallas that she was feeling alone and upset and needed a supportive session to reassure her. Dallas and plaintiff discussed plaintiff's frustrations with her family, her supervisor, and her peers. They then explored options for therapy regarding more responsible behavior. The following week, plain-

tiff called Dallas and told him she would not be coming for her appointment; she asserted that she felt "okay." Dallas again closed his file on plaintiff.

On October 30, 1984, plaintiff filed a complaint against defendants Dallas, Holy Family, Levy, and Martin. Plaintiff asserted therein that she was injured when in reliance on the treatment of Dallas, whom she alleged held himself out as a physician, she failed to receive proper medical treatment. Plaintiff further asserted that Holy Family's referral to Dallas breached its duty to recommend only qualified providers to their patients. This complaint was dismissed for failure to state a cause of action. Plaintiff filed a first amended complaint in March 1985, which was dismissed for failure to state a cause of action. Plaintiff's second amended complaint, filed in May 1985, in which she asserted that Dallas held himself out as a physician in numerous ways causing her to forego alternative medical treatment for her allegedly diagnosed premenstrual syndrome condition, was also dismissed. After plaintiff's third amended complaint was dismissed, plaintiff filed a fourth and final amended complaint on September 9, 1985. On February 10, 1986, pursuant to defendants' motion, the trial court entered an order granting summary judgment, finding that plaintiff had failed to state a cause of action against any defendant and that no question of fact remained for jury resolution.

Plaintiff's first contention on appeal is that the trial court erred in granting Holy Family's motion for summary judgment because there exists a question of law. Specifically, plaintiff maintains that under the Illinois Hospital Licensing Act Requirements (77 Ill. Admin. Code ch. 1(b) (1986)), defendant Holy Family has a duty to supervise the care received by its patients and that it deviated from this duty by failing to provide plaintiff with appropriate psychiatric care.

On a motion for summary judgment, the trial court must determine whether there is a genuine issue as to any material fact that requires a trial. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958.) The purpose of summary judgment is not to try issues, but to determine whether any triable issue exists. (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 221 N.E.2d 633.) Examination of the pleadings, depositions, exhibits, and affidavits of record must reveal that no genuine issue of material facts exists and that the movant is entitled to judgment as a matter of law. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958; *Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 432 N.E.2d 1262.) In determining whether a genuine issue of fact exists, the court must strictly construe the evidence against the movant. *Johnson v. St.*

*Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.

It is settled that a hospital is not an insurer of a patient's safety, but it owes the patient a duty of protection and it must exercise a degree of reasonable care towards him as his known condition requires. (*Slater v. Missionary Sisters of the Sacred Heart* (1974), 20 Ill. App. 3d 464, 314 N.E.2d 715.) A hospital is under a duty to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.) A plaintiff must prove that the hospital failed to comply with the standard of proper care which guides institutions holding themselves out as devoted to the care and saving of human life and that this failure resulted in the injury complained of. (79 Ill. App. 3d 709, 399 N.E.2d 198.) The standard to which the hospital is held is the accepted standard of care in the medical community. *Crawford v. Anagnostopoulos* (1979), 69 Ill. App. 3d 954, 387 N.E.2d 1064.

Here, plaintiff asserts that Holy Family deviated from the applicable standard of care when it allegedly failed to provide her with appropriate psychiatric care. Plaintiff relies primarily on section 250.2220(c) of the Illinois Hospital Licensing Act Requirements (77 Ill. Adm. Code 250.2220(c) (1986)), which states that while psychiatric care may be rendered in a licensed hospital on a short term or emergency basis, if such a patient is hospitalized more than 24 hours, adequate and appropriate consultation should be utilized and acceptable sources for referral of psychiatric patients must be arranged and identified. Plaintiff maintains that because she was hospitalized at Holy Family longer than 24 hours for psychiatric care, the hospital should be held to the standards of a licensed psychiatric service; plaintiff also maintains that her discharge could only have been authorized by the faculty director or chief officer of the mental-health facility, in this case Sister Patricia Ann of Holy Family, in accordance with the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 1—100 *et seq.*, par. 3—902(a)).

In the instant case, plaintiff, hospitalized for emergency treatment for a drug overdose, was examined the following day by Levy, a consulting psychologist, at the request of Dr. Kahn, her attending physician; in addition to treating plaintiff for an overdose, Kahn believed that she had medical problems requiring the care of a gynecologist. Levy opined in his consultation report on October 6, the day after plaintiff's arrival, that plaintiff might be discharged when physically able and suggested that plaintiff be referred to Lutheran General

Hospital for outpatient mental-health care. Although plaintiff was found to be stable for discharge on October 6, she was not discharged until October 9 when plaintiff's gynecologist determined that plaintiff was medically able and ordered her discharge. Thus, the majority of plaintiff's hospital stay at Holy Family was not for psychiatric treatment as she contends, but was rather for medical reasons. The decision to discharge plaintiff was made by her attending physician and consulting gynecologist when they determined she was physically able.

We find that because plaintiff's hospital stay was not primarily for mental-health care but for medical care, Holy Family should not be held to the standard of a licensed psychiatric facility, but to the standard of proper care of a licensed general hospital in the medical community. Accordingly, plaintiff's discharge by her attending physician, a psychiatrist and a gynecologist, rather than by the president of Holy Family Hospital, was proper in light of the circumstances of her admission and treatment received during her stay.

■ Moreover, there is no merit to plaintiff's argument that Holy Family deviated from its duty to supervise the care received by her by failing to provide plaintiff with appropriate outpatient psychiatric care. It is settled that a hospital may be liable for injuries suffered by a patient under its care both for its physician-agent's misconduct and for a violation of an independent duty owed by a hospital to review and supervise medical care administered to a patient. (*Ingram v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 456, 438 N.E.2d 1194.) Although a hospital may be liable for injuries to a patient caused by the negligence of its agents or employees, traditionally, it has been held that a hospital is not liable for acts of one who renders medical care as an independent agent outside the control of the hospital. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Hundt v. Proctor Community Hospital* (1972), 5 Ill. App. 3d 987, 284 N.E.2d 676.

■ Here plaintiff was initially referred to Lutheran General Hospital by Levy. When plaintiff telephoned Holy Family on the day following her discharge she told Jeff Parker, a licensed social worker, that she no longer lived near that facility. In response to plaintiff's request for mental-health facilities and private therapists near her new home, Parker gave plaintiff the names of five mental-health resources: the county health department, a community hospital with a mental-health clinic; two public clinics, and a private psychotherapist, defendant Dallas. From these resources plaintiff chose Dallas with whom to begin therapy treatment. Thus, Holy Family, through its agent Parker, did not refer plaintiff to Dallas exclusively but sug-

gested several types of mental-health resources and therapeutic alternatives from which plaintiff could choose. Moreover, it was not improper or a breach of any hospital-patient duty for Holy Family to include Dallas, a State-licensed therapist, among its referrals to plaintiff.

■ We find that Holy Family did not breach its duty to protect plaintiff and to exercise reasonable care towards plaintiff as her condition required. The evidence indicates that plaintiff was not primarily hospitalized for psychiatric problems at Holy Family as she contends, but for treatment of an undisclosed gynecological problem. Consequently, Holy Family was properly not held to the standard of a licensed psychiatric facility and plaintiff's discharge by her attending physicians was not in error. Moreover, there is no evidence to suggest that Holy Family failed to conform to the legal standard of reasonable conduct or reasonable care towards plaintiff as her known condition required or that Holy Family failed to comply with the accepted standard of care in the medical community. Accordingly, the trial court did not err in dismissing plaintiff's complaint against defendant Holy Family.

Plaintiff's second contention on appeal is that the trial court erred in granting defendant Dallas' motion for summary judgment because a question of law and fact existed as to the extent of the duty owed by defendant Dallas to plaintiff. As we noted above, summary judgment is to be granted when examination of the pleadings, depositions, and affidavits of record taken together show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958.

■ In *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13, the appellate court recognized a cause of action for social worker malpractice and held that the elements necessary to establish such an action are the same elements of any negligence case. Thus a plaintiff must plead: (1) that defendant owed a duty to plaintiff, (2) that defendant failed to perform or breached that duty, (3) that the breach was the proximate cause of plaintiff's injuries, and (4) damages. *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 303 N.E.2d 146.

Here plaintiff maintains primarily that defendant Dallas breached a duty owed to her by failing to consult with her previous therapist, Levy. Plaintiff also asserts that defendant Dallas only held one consultation with defendant Martin regarding her case; plaintiff contends that such inaction was in contradiction with the contract between Dallas and Martin, which stated that the two therapists would work to-

gether one or two hours per month during which time Martin would be the psychological consultant in the supervision of Dallas.

Defendant Dallas admitted in his signed affidavit that he had failed to consult with plaintiff's prior therapist, yet stated that he did so only after plaintiff advised him that her previous therapist was not helpful and had not provided her with adequate treatment. During the time of his treatment of plaintiff, Dallas had a complete patient history completed by plaintiff which provided him with information concerning her history. Hence, defendant Dallas was aware of plaintiff's suicide attempt and of her prior period of hospitalization. Accordingly, defendant procured sufficient information to diagnose and treat plaintiff. As to plaintiff's allegations that defendant met in consultation with Martin on only one occasion, defendant stated in his affidavit that he first consulted with Martin within seven days of plaintiff's first visit and thereafter maintained ongoing monthly supervision with him concerning plaintiff's treatment and progress.

■■ While plaintiff objects on appeal now that Dallas' affidavit is not witnessed by a notary public, we note that plaintiff failed to raise this objection at trial. The sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by a motion to strike or otherwise in the trial court. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) Accordingly, such issue is waived.

■■ Plaintiff failed to state in her affidavit sufficient facts to refute the above assertions made by defendant Dallas in his affidavit. Moreover, plaintiff failed to name any expert in support of any of the theories of professional negligence against Dallas as she was required to do by Supreme Court Rule 220 (103 Ill. 2d R. 220; *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13). Hence, after a briefing and a hearing on the matter, the trial court held that plaintiff's affidavit was insufficient and granted summary judgment in favor of Dallas. We find that such decision was not in error.

■■ Plaintiff's third contention on appeal is that the trial court erred in dismissing plaintiff's complaint in which she alleged that defendant Dallas engaged in the unauthorized practice of psychology and psychiatry.

As defined by section 1—122.1 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, par. 1—122.1), a clinical social worker is a person who (1) has a master's degree in social work from an accredited graduate school of social work and (2) has at least three years of supervised post-master's clinical social work practice which shall include the provision of mental-health ser-

vices for the evaluation, treatment, and prevention of mental and emotional disorders.

Here the record indicates that defendant Dallas holds a master's degree in social work, a master's degree in theology, and a doctorate in ministry. Prior to his private practice in which he specialized in psychotherapy, defendant served for 13 years as a director of social services at a community hospital and was the director of the Outreach Program of Du Page County, an offshoot from the hospital. Dallas is an accredited clinical social worker. Thus, Dallas was certainly qualified to perform the type of therapy he regularly practiced.

As the trial court repeatedly stated in its orders dismissing plaintiff's first five complaints at law, plaintiff may not refer to Dallas as holding himself out as a physician or as anything other than a licensed clinical social worker unless facts supporting such an allegation are found. Hence, the trial court found that Dallas was properly engaged in the practice of psychotherapy, an activity that he was licensed, authorized, and trained to do. Thus plaintiff's argument that the practice of psychotherapy by defendant, a licensed social worker, is in violation of section 24 of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4459) is without merit.

While plaintiff claims that she was confused by the term "psychotherapy" and believed it to be the same as psychology or psychiatry, this court should find no act by Dallas caused plaintiff to be misled. At no time did Dallas hold himself out as anything other than a psychotherapist. Accordingly, we reject plaintiff's argument that Dallas was engaged in the unauthorized practice of psychology or psychiatry and find it to be without merit.

■■ Plaintiff's final contention on appeal is that Dallas wrongfully submitted insurance claims under defendant Martin's provider number. As this issue was not addressed before the trial court below, and is raised for the first time on appeal, it is waived. Moreover, plaintiff's only claim of harm that such actions may have caused her is that she was consequently not made aware that Dallas was not a psychiatrist or a psychologist as she allegedly believed, but was a social worker.

For the reasons set forth above, we affirm the judgment of the trial court granting summary judgment in favor of defendants Holy Family and Dallas.

Affirmed.

SCARIANO, P.J., and BILANDIC, J., concur.