MARTIN URBAN *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF IN-
VERNESS *et al.*, Defendants-Appellees.

First District (5th Division) No. 86—0083

Opinion filed May 6, 1988.—Modified on denial of rehearing November 18,
1988.—Rehearing denied November 22, 1988.

MURRAY, J., affirming in part and dissenting in part.

George E. Downs, of Palatine, for appellants.

Judge & Knight, Ltd., of Park Ridge, and Arnstein, Gluck, Barron & Milligan, of Chicago, for appellee Village of Inverness.

4

Garbutt & Jacobson, of Chicago, for appellee Jon Floria.

Baker & McKenzie, of Chicago, for appellee Inverness Park District.

JUSTICE PINCHAM delivered the opinion of the court:
Plaintiffs, Martin Urban, Philip Urban and David Peterson, initiated this action to enjoin the Village of Inverness (the Village) and the Inverness Park District (the Park District), from (1) unnaturally increasing the flow of water over plaintiffs' properties; (2) blocking the natural flow of water, which caused water to collect on plaintiffs' properties; and (3) for damages to the structures on plaintiffs' properties caused by flood. The trial court granted defendants' motions for summary judgment. The plaintiffs appeal and contend for reversal that the affidavits and exhibits attached to defendants' motions for summary judgment were insufficient to grant the motions as a matter of law and that the two-year statute of limitations of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 8—101) does not bar the instant action. Defendant, the Village of Inverness, contends on this appeal that it had no duty to prevent or forestall the flooding of plaintiffs' properties. The Park District contends that not only was plaintiffs' action barred by the statute of limitations, but, also, the Park District did not create and was under no duty to repair the condition which caused the flooding, and summary judgment on behalf of the Park District was therefore appropriate. Conversely, plaintiffs urge that there were genuine issues of the material facts as to the causes and circumstances of the flooding, which necessitated a trial and prohibited entry of summary judgment. The facts follow.
On April 18, 1980, Martin Urban, Philip Urban and David Peterson, owners of real estate in the Village of Inverness, brought an action against the Village and the Park District. The complaint for injunctive relief alleged that defendants, the Village and the Park District, diverted and increased the normal flow of water and thereby unnaturally increased the flow of water over the plaintiffs' properties, that the defendants failed to properly maintain a drainage to the plaintiffs' properties, and allowed crushed drain tile to interrupt the natural flow of water from the plaintiffs' properties into Salt Creek. The complaint further alleged that defendant, the Park District, blocked or crushed the drain tile and graded the properties as to interrupt the ordinary flow of water from the plaintiffs' properties, thereby causing a damming and flooding effect and blocking the natu-

ral flow of water into Salt Creek. The defendants filed motions for summary judgment, asserting, *inter alia*, that plaintiffs' causes of action against them were barred by the statute of limitations.

The record reflects that in 1972 plaintiff David Peterson coauthored and signed a letter to Cook County Board President George Dunne. In that letter, Peterson and his neighbors, the previous owners of the Martin and Philip Urban properties, complained of the "flood condition" affecting their area. Also in his deposition, Peterson testified as follows:

"Q. When did you first become aware of the collection or accumulation of water on the property that's involved in this lawsuit?

A. 1972.

* * *

Q. When was the next time after 1972 that the property flooded?

A. 1978.

* * *

Q. When was the next time the flooding occurred on the property?

A. '79.

* * *

Q. How many incidents are we talking about altogether?

A. Three.

Q. So this is the last time that is the subject of the lawsuit is the '79 one?

A. Yes."

In his deposition, Peterson also stated that he did complain to George Dunne about the problem in 1972.

Also, plaintiff Philip Urban testified in his deposition that prior to purchasing his property, he was informed by his predecessors of the flooding conditions in the area. Philip Urban testified as follows:

"Q. Did you have any discussions with Mr. Bessemer regarding the conditions of the property prior to the time of purchase?

A. Yes.

* * *

Q. Did you discuss with Mr. Bessemer at all flooding of high water levels on his property or near his property?

A. Yes.

Q. What did he say to you and what did you say to him?

A. He said that there was a flood, one severe flood at one

time and that the problem was corrected."
Similarly, Martin Urban testified in his deposition as follows:

"Q. Did you have any discussion with the Zelsdorfs as to water damage or flooding on their property?

A. I had talked to them about water damages because we did have a flood prior to me buying the property. And I wasn't really interested in buying a property that was going to flood out all the time. He says there has been some small floods; nothing really, you know, damaging other than the one I saw.

Q. And this conversation that you are relating to us transpired prior to your purchasing the property?

A. Correct."

In support of their motions for summary judgment the defendants attached the above depositions, as well as that of the engineering expert. In addition, the motions were supported by materials and documentations from the Cook County highway department and the 1972 letter signed by plaintiff Peterson. On December 9, 1985, the trial court granted defendants' motions for summary judgment.

The plaintiffs initially contend the affidavits and exhibits attached to the motions for summary judgment were insufficient to grant the motions as a matter of law.

■ A deposition may be used "for any purpose for which an affidavit may be used." (107 Ill. 2d R. 212(a)(4).) However, the rule allowing the use of deposition testimony in support of a motion for summary judgment contemplates that the deposition relied upon is one which has properly been made a part of the court record. Supreme Court Rule 207 prescribes the procedure for signing and filing depositions. (107 Ill. 2d R. 207.) The deposition must either be signed by the deponent or contain a waiver of signature. It is further required that the deposition be certified, sealed and filed with the clerk of the court. When no attempt is made to comply with the above rules, the deposition is clearly informal and insufficient. *Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468.

■ ■ In the case at bar, the plaintiffs object to the use of excerpts from the depositions, rather than the complete depositions. The plaintiffs also argue that the depositions were not in compliance with Supreme Court Rule 207. Objections to the use of a deposition filed in support of a motion for summary judgment may be raised in the trial court either by motion to strike or otherwise. (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 436.) However, in the instant case no objection was made in the trial court to the filing of the deposition excerpts. Supreme Court Rule 211(d) (107 Ill. 2d R. 211(d)) provides that

errors and irregularities in connection with depositions are waived unless a motion to suppress is promptly made. The sufficiency of the depositions cannot be tested for the first time on appeal where no objection was made either by a motion to strike or otherwise. *Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614, 504 N.E.2d 791.

In view of the provisions of Supreme Court Rule 211(d) (107 Ill. 2d R. 211(d)) and the well-established rule that issues which are not raised in the trial court are not to be considered for the first time on appeal even in summary judgment cases (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 329 N.E.2d 901; *Cibis v. Hunt* (1964), 48 Ill. App. 2d 487, 199 N.E.2d 246), we hold that the deposition and exhibit defects or errors of which the plaintiffs now complain were waived by their failure to point out the same to the trial court. In passing upon defendants' motions, the trial court was not asked to disregard the depositions and accordingly did not do so.

The next issue to be resolved is whether the two-year statute of limitations of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—101) barred the instant action.

The plaintiffs maintain that the defendants failed to establish that plaintiffs' cause of action existed prior to 1979, because the defendants did not establish that the plaintiffs' properties were damaged prior to that year. The plaintiffs further maintain that the repeated flooding caused repeated injuries and therefore the statute of limitations did not begin to run until the last day of the injury, which was 1979. However, the defendants argue that the statute of limitations began to run in 1972 when plaintiffs acquired knowledge of the flooding and damages and the existence of the cause of action existed.

■ The purpose of the summary judgment procedure is not to try a fact issue, but to determine whether any genuine issue as to any material fact exists between the parties. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100, 479 N.E.2d 1211; *Eakins v. New England Mutual Life Insurance Co.* (1984), 130 Ill. App. 3d 65, 473 N.E.2d 439.) If in this case the depositions and pleadings on file show that there is no such issue, then the trial court correctly decided that the defendants were entitled to a judgment.

■ The basis of plaintiffs' action is tort. The Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 8—101) requires that actions be "commenced within two years from the date that the injury was received or the cause of action accrued." However, where a tort involves repeated injury, the limitations period begins to run from the date of the last injury or when the tortious acts cease. *Starcevich v.*

*City of Farmington* (1982), 110 Ill. App. 3d 1074, 1079, 443 N.E.2d 737; *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 364, 300 N.E.2d 331.

The proof necessary for the trial court to determine as a matter of law from the record that the limitations period has run is stated in *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39:

> "Plaintiffs' complaint does not allege the *date on which their lands were first flooded* nor *the dates of any subsequent flooding.* The complaint does not allege *whether their lands have been continuously flooded since construction of the dam or whether the flooding is intermittent.* It is likewise not entirely clear *whether plaintiffs contend that the construction of the dam or the operation of the dam's radial gate is the cause of their injury. This information is necessary to determine whether the period for giving notice under section 8—102 has lapsed.* [Citation.]" (Emphasis added.) 119 Ill. App. 3d at 1076-77.

Accordingly, in the instant case the material facts were those which determined that the limitations period had run.

■ In passing upon defendants' summary judgment motions, the trial court was confronted with and had to decide whether the statute of limitations had run. In their depositions the plaintiffs admitted that they were aware of the flooding on their properties. Plaintiff Peterson admitted in his deposition that he first became aware of the flooding on his property in 1972 and again in 1978. Plaintiff Philip Urban admitted that, prior to purchasing his property, he was informed by the previous owner "that there was a flood, one severe flood at one time and that the problem was corrected." Likewise, Martin Urban admitted in his deposition that he was aware of flooding on his property prior to his purchasing it. With these admissions of plaintiffs in the record it became apparent that there was a genuine issue as to when injury actually occurred or when the cause of action accrued.

Plaintiffs' contention that the flooding was a repeated injury was supported by the record. The trial court erred in granting the motion for summary judgment. The trial court should have strictly construed the evidence against the movant defendants. *Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614.

■ In *Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074, 443 N.E.2d 737, the plaintiff alleged receipt of injury on two separate occasions, one in 1974 and the other in 1980, from the defendant's negligent design of a culvert system. Both injuries occurred during unusually heavy rainstorms and involved the washing

away of plaintiff's driveway. The court held that the rule applicable to these facts was that each successive injury by overflow gave rise to a separate cause of action and commenced a new limitations period. Likewise in *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1073, the court held that in determining compliance with the limitations period in the governmental tort immunity statute on a claim for flood damages from a construction by the Village, the period would commence running either from the date of completion of the construction if continuance and operation of a permanent structure were necessarily injurious, or from the date of the last overflow, and only for such overflow if damages resulted from recurrent and intermittent overflows of plaintiffs' land.

In the case at bar, the plaintiffs were victims of "repeated" injury. The record before the trial court reflected that in 1972 the plaintiffs' land flooded. There were subsequent floods in 1978 and 1979. The plaintiffs alleged that the intermittent flooding was due to the defendants' negligence in maintaining crushed drain tile, which clogged the drain, and in dumping and grading dirt and landfill. Where a tort involves repeated injury, the statute of limitations begins to run from the date of the last injury or when the tortious acts cease. (*Starcevich v. City of Farmington* (1982), 110 Ill. App. 3d 1074.) The trial court improperly restricted this rule in precluding plaintiffs' action in the instant case. The last alleged flood damage was in 1979 and plaintiffs brought this action in 1980, within the two-year statute of limitations period. Plaintiffs' cause of action was not barred by the statute of limitations and the trial court erred in granting summary judgment for defendants on the ground that the action was barred.

Plaintiffs' third amended complaint alleged that prior to April 1979, the Village annexed certain land to the Village and that solely by reason thereof, the Village assumed jurisdiction over the drainage system and owed plaintiffs a duty to prevent and forestall flooding of plaintiffs' properties. Conversely, the Village argues that it was under no duty to prevent or forestall the flooding of plaintiffs' properties. There is no case law which holds that the Village was under such a duty and there is nothing in the Illinois Drainage Code (Ill. Rev. Stat. 1985, ch. 42, par. 1—1 *et seq.*) which creates such a duty.

In Illinois, drainage districts are created and governed by the Illinois Drainage Code. (Ill. Rev. Stat. 1985, ch. 42, par. 1—1 *et seq.*) They have no existence without statutory authority, and the statutory procedure must be followed in the creation of a drainage district. (*Drainage District No. 1 in Sand Prairie Township, County of*

*Tazewell v. Village of Green Valley* (1979), 69 Ill. App. 3d 330, 387 N.E.2d 422.) The duty to maintain the drainage district rests upon the drainage district commissioners. Section 4—15 of the Illinois Drainage Code (Ill. Rev. Stat. 1985, ch. 42, par. 4—15) provides:

> "*The Commissioners shall* make an annual inspection of all the district's improvements and works and *keep the drains, levees, pumping plants and other works of the district in operation and repair.*" (Emphasis added.)

Simply because the Village annexed certain land of the drainage district, no duty was thereby imposed on the Village to maintain the drainage district, and the mere fact that the land in question was annexed and was within the proposed boundaries of the Village did not impose a legal duty on the Village to maintain flood control or the responsibility for the drainage district. Plaintiffs' mere allegation that the land was annexed to the Village was insufficient to confer authority or a duty on the Village to maintain, possess or control the drainage of the annexed land. Annexation simply brought the annexed land within the geographical boundaries of the Village. Likewise, the mere fact that the drainage district itself was located within the boundaries of the Village did not impose any duty on the Village to maintain, repair or control the drainage district.

 Plaintiffs contend that damaged, crushed drain tile contributed to the flooding of plaintiffs' properties by preventing a normal drain off of water from plaintiffs' properties. It was undisputed, however, that this damaged, crushed drain tile was not under the Village land, but rather, it was under land owned by the Park District. Clearly, the Village was under no duty to repair this damaged, crushed drain tile or to prevent any flooding which it caused.

Plaintiffs alleged that the Village (and the Park District) were negligent in (1) allowing a culvert under Ela Road to become blocked; (2) blocking a drain tile, which interrupted the natural water flow; (3) allowing the drain tile to be broken and in disrepair; (4) allowing the Park District to grade the land in a manner that formed a dam which blocked the natural water flow; and (5) allowing developments to develop land without proper engineering, which changed the natural water flow into plaintiffs' land. Plaintiffs contended that the Village had a duty to ensure the natural flow of water across plaintiffs' land and into Salt Creek. Plaintiffs did not allege, however, that the Village owned, possessed, maintained or controlled any land across which a natural water flow was impeded, and the culvert at Ela Road, which plaintiffs alleged was blocked, was located, not on the Village's property, but rather the culvert was located on county property.

■■ In *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, the supreme court held that the Village of Frankfort could not be held liable for its failure to establish sufficient minimum foundation grade levels, in its village ordinance, to prevent flooding of homes built in the village. In *Ferentchak*, to prevent home flooding, the village by ordinance established minimum foundation grade levels, which later proved to be inadequate. Cadine and Philip Ferentchak brought an action in negligence against the developer's architect, the home builder and the Village of Frankfort for water damages to their home from flooding. The Ferentchaks contended that the village was negligent in establishing minimum grade foundation levels not high enough to prevent their home from flooding. The trial court entered judgment for the Ferentchaks against the village. The appellate court reversed, stating:

> "We turn next to the issues raised by the appellant village of Frankfort. The village argues that the evidence in the record fails to demonstrate that it had any duty to plaintiffs and also fails to establish that any acts of the village were negligent or were a proximate cause of the plaintiffs' damages. We agree. *** In *Hannon*, where a village's alleged negligence in failing to enforce its building ordinances was asserted, the court examined the question of duty within a similar context:
>
>> 'The analogous cases, however, draw a distinction between ordinances which are designed to benefit the public at large and those designed for the benefit of individual members of that public. The failure to enforce the former will not raise a duty the violation of which could support a cause of action for damages against the municipality.' " 121 Ill. App. 3d at 610.

In exonerating the village and further holding that the village owed the plaintiff homeowners no duty to enact or enforce ordinances which would prevent the flooding of plaintiffs' home, the appellate court additionally stated:

> "The zoning ordinance and building code of the village of Frankfort, as with those other municipalities, were enacted for the purpose of assuring protection to the public generally in the construction of buildings within the municipality. This is achieved through the imposition of minimum requirements and regulations designed to apply generally to all such construction. As in the above cases, the enforcement and interpretation of its building and zoning codes were governmental functions of this village, from which *no duty to individual members of the public*

*arose.* The Code Administrator's actions in specifying foundation grade and lot grade, as well as swale specifications, were taken pursuant to his duties and authority for enforcement of the zoning and building codes of the village of Frankfort. In so acting, he was specifying what was necessary and required to satisfy municipal standards applying to all construction. He was not specifying what would be sufficient and adequate to insure the habitability of this particular house in these particular circumstances. He was not guaranteeing or asserting that the municipality's requirements were sufficient to solve any potential drainage problem with this particular home. In adopting and enforcing building requirements a municipality is not warranting to a subsequent purchaser that its requirements will ensure construction of a habitable building, regardless of surrounding circumstances. The ultimate responsibility for the engineering soundness of a building in particular circumstances lies with the builder, and one of the circumstances to be considered in meeting that responsibility is applicable zoning and building requirements. The actions of the Code Administrator in specifying requirements for construction to the builder herein were in fulfillment of the same duties which he performs for others in the general public in similar circumstances. He was interpreting and enforcing the applicable rules and regulations governing construction within the village. Therefore, *no duty arose in relation to these plaintiffs such that liability may be imposed upon the municipality when those requirements do not insure a habitable building."* (Emphasis added.) 121 Ill. App. 3d at 612-13.

The supreme court granted leave to appeal in *Ferentchak,* affirmed the decision of the appellate court, and, in holding that the village's failure to enact an adequate ordinance or the village's negligence in enforcement of the ordinance to prevent home flooding did not confer a cause of action against the village by the home owner, the supreme court stated:

"Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. *As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes.* The charge for building permits is to offset expenses incurred

by the city in promoting this public interest and is *in no way* an insurance premium which *makes the city liable* for each item of defective construction on the premises." (Emphasis added.) 105 Ill. 2d at 474.

Plaintiffs' contention in the case at bar, that the Village had a duty to prevent flooding, is fallacious and lacks merit. As stated, the crushed drain tile was under the land owned by the Park District and not the Village and the Village had no duty to maintain or repair the drain tiles. For the reasons stated, the trial court properly granted the Village's motion for summary judgment and we affirm the summary judgment on behalf of the Village.

We conclude that summary judgment for the Park District was improperly entered. Contrary to the dissent's conclusion that plaintiffs merely asserted that someone simply entered upon Park District land, plaintiffs additionally asserted that the "someone" was Park District employees who dumped and graded dirt and landfill on the Park District land, which, with the crushed drain tile under the Park District land, damaged and disrupted the natural water flow, causing plaintiffs' properties to flood. Section 12—7 of the Illinois Drainage Code (Ill. Rev. Stat. 1985, ch. 42, par. 12—7) provides that whoever wilfully obstructs, impairs or destroys any covered drain is guilty of a Class A misdemeanor and that the dumping of trash, refuse, or debris into an open drain shall be treated and considered as obstructing a drain. This section additionally provides that

"whoever wilfully or negligently obstructs, injures, cuts, breaches or destroys a private, mutual or district drain or drainage structure, levee or pumping plant is liable for the cost of repairing or reconstructing the same and for any damage to lands, crops or other property that may have resulted therefrom." Ill. Rev. Stat. 1985, ch. 42, par. 12—7.

The trial court did not determine whether the Park District acquired the liability caused of the previously crushed drainage tile when the Park District acquired the land on which the crushed drainage tile was located. Plaintiffs' allegations created genuine issues of material facts which precluded the entry of summary judgment for the Park District. The right to summary judgment must be free of doubt. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.) The Park District's right to summary judgment in the case at bar did not satisfy this criteria. Because there were genuine issues of material facts created by plaintiffs' allegations, plaintiffs should not be denied the right to have the appropriate fact finder, a jury or a judge properly resolve these factual controversies.

The trial court erred in entering summary judgment on behalf of the Park District, and we therefore reverse said judgment and remand the cause to the trial court for further proceedings as to the Park District.

Affirmed in part; reversed in part and remanded.

LORENZ,* P.J., concurs.

JUSTICE MURRAY, concurring in part and dissenting in part:
I agree with the majority that the statute of limitations did not begin to run until the last injury. However, I disagree with the majority as to the propriety of reversal of the trial court's summary action at least as to the Inverness Park District.

The Illinois Drainage Code provides that only a party who wilfully obstructs or damages a drainage pipe may be held liable for damages resulting therefrom. (Ill. Rev. Stat. 1985, ch. 42, par. 12—7.) Illinois case law establishes that the only duty a party participant of a drainage system has is to refrain from overt acts which are disruptive of the system. *Fobar v. Higginson* (1955), 6 Ill. App. 2d 29, 126 N.E.2d 521.

The deposition testimony disclosed that the contribution of the park district to the flooding on plaintiff's land was caused by a crushed drainpipe. The evidence also established that the crushed pipe existed at least two years before the park district acquired the property.

The plaintiffs, in their reply brief, seem to argue only that there is an issue of fact as to the park district's liability. Yet, the evidence before the trial court against the park district consisted of only the affidavits of plaintiffs that stated, "Your affiant saw employees of the Inverness Park District or someone else enter upon the land of the Park District and dump dirt and fill upon the land and grade it off." Plaintiffs' experts conceded that any landfill on the park district property would play a *de minimus* role in the flooding of plaintiffs' property. Although the concept of *de minimis non curat lex* has disappeared from the modern law school classrooms, it still is recognized in Illinois in cases of this nature. *People v. City of Des Plaines* (1966), 76 Ill. App. 2d 243, 222 N.E.2d 1.

The right to summary judgment must be free of doubt. (*Dakovitz*

*v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.) The mere conclusion in the plaintiffs' affidavit that an affiant saw employees of the park district or someone else enter upon the land, etc., is insufficient to create a question of fact. Even though a complaint may purport to raise issues of material fact, summary judgment is appropriate if the issues are not supported by evidentiary facts. *Petry v. Chicago Title & Trust Co.* (1977), 51 Ill. App. 3d 1053, 367 N.E.2d 385.

There are no evidentiary facts indicating that the park district caused the crushing of the pipe or that it otherwise overtly contributed to the flooding on plaintiffs' land. Accordingly, I would affirm the trial court's granting of summary judgment for the Inverness Park District.